## MORGAN v VIRGINIAN JOINT STOCK LAND BANK et

Ohio Appeals, 1st Dist, Clinton Co

No 90. Decided Jan 26, 1931

MIDDLETON, J, sitting for CUSHING, J.

Shivley & Holmes, Dayton, for plaintiff in error.

Miller & Finney, Xenia, for defendant in error.

MIDDLETON, J. .

In a general way it may be said that this determination of the lower court might well be sustained on the ground that it was supported by the evidence, and that Morgan failed to establish his claim of fraud and misrepresentation by the degree of proof required in cases of that kind. However, there are some admitted facts and other circumstances established by the evidence which conclusively preclude any equitable relief to Morgan.

It is a well established rule of equity that it assists only those who are diligent in demanding their rights. The undisputed facts show that Morgan accepted the deed for the property involved on or about October 10, 1929, and made no complaint of any fraud on the part of the Andersons until the filing of his cross petition on September 3, 1930. What is still more important is that in his pleading so filed he states that shortly after the transaction was consummated he discovered facts which he claimed established the misrepresentations and fraud of the Andersons. It has long been the settled law that one who attempts to rescind a contract must act promptly and within a reasonable time or, as expressed by some courts, within a seasonable time after the discovery of the facts which it is claimed entitles him to a rescission of the contract. Morgan utterly failed to observe this equitable requirement. For more than ten months he remained passive as to his claimed rights. There is no evidence of any demand made by him for a rescission of his contract or a return of his property

during all that intervening time. All that he did to indicate any dissatisfaction was to refuse to sign a direct obligation to the mortgagee. It is apparent, we think, that if the mortgaged property had sold for an amount sufficient to pay the mortgage indebtedness he would not have attempted to rescind the contract, and that it was only after a deficiency was apparent and he became liable for a personal judgment against him for such deficiency that he attempted to assert against his grantors his claim of fraud and misrepresentation, and this long delay precludes any equitable relief.

Another rule of equity stands as a bar to Morgan's demands for a release from his liability under the stipulations in the deed, and that is the rule which requires every person to exercise reasonable care and prudence in his business affairs. The evidence fully establishes that Morgan also failed to comply with this requirement, and he substantially admits his failure in this respect in his own testimony. On page 18 of the bill of exceptions he testified that two or three days after the exchange of deeds he visited this farm to see the tenant on the farm, and he then testified as follows:

"I told him it was dumb for me to come down there after we closed the deal up. I told him I should have come down there and investigated sooner but I took Mr. Schulz's word for it."

It is pertinent to say that Schulz was the agent of the Andersons in negotiating the transfer of the property and that he denied making the statement claimed by Morgan. Other evidence in the case shows, however, that Morgan had visited the farm before the sale was consummated and that he had full opportunity to see for himself the condition of the property, the quantity of ground then in growing corn, and particularly the condition in which the buildings, including the residence, were at that time. His only excuse for not making an investigation then was that he was with some other party and did not have the time. It appears that he employed an attorney to investigate the title prior to making the deal, including the mortgage on the premises, and that this investigation certainly disclosed the dates for the payment of interest on said mortgage. He lived at Dayton, Ohio, and had lived there for many years engaged in the real estate business. He had every opportunity to know the general character of the land where he purchased and of the land itself. His negligence in his own protection makes it impossible for a court of equity to give him any relief.

It is contended by Morgan that under the authority of **Unity Discount & Mortgage Co v Joseph, 117 Oh St 127**, the mortgagee may not assert any claim against him. It is sufficient to say that the doctrine of that case rested on facts wholly different from those shown in the record in the instant case. In the case cited there was a rescission of the assumption provision in the deed by the parties thereto, and it appears that such rescission was made before the mortgagee could claim any vested rights in the transaction. In the instant case there was no rescission and no cancellation by the Andersons, and they are entitled to the protection the contract affords them independent of any of the rights of the mortgagee.

We find nothing in this record that would justify any interference with the decree and judgment of the court of common pleas and it is affirmed.

HAMILTON and ROSS, JJ, concur.