OPINION
Appellant raises the following assignment of error:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT IN GRANTING DEFENDANTS-APPELLEES [SIC] MOTION FOR SUMMARY JUDGMENT."
Under this sole assignment of error, appellant asserts that the trial court erred by granting summary judgment where the evidentiary materials established factual issues regarding her claims of breach of fiduciary duty, fraud, and punitive damages and that no time limitations barred her claims for recision and unjust enrichment.
MCI is a closely held corporation which was established in 1917. Appellant inherited seven hundred eighty shares of MCI stock in 1953 from her mother.
In 1973, appellant agreed to help appellees replace the officers and directors of MCI. To do so, Gerald Hipp, who is appellant's cousin, and Patricia Hipp entered a voting trust agreement with appellant. On April 6, 1973, appellant also signed an option agreement whereby appellees could buy her shares at eighty percent of their book value before appellant could transfer the shares to anyone else. Appellees were successful in removing the management.
Patricia Hipp, as president of the company, sent a letter dated December 21, 1978 to all shareholders. That letter read:
 "Enclosed is your fourth quarter dividend check representing a dividend of $1.25 per share.
 "In the past several years the financial condition of the Company has improved. Because of this and the lack of marketability for small amounts of stock in a closely held Corporation, a resolution was passed a couple of years ago at the Annual Shareholders Meeting permitting the Company to buy and retire stock.
 "The past year the Company bought and retired seventy-five shares of stock that the Cleveland Trust held in a fiduciary capacity for $130.00 per share.
 "We feel in all fairness that we should make this same offer to you in the event you wish to sell now while the money is available.
 "Your decision is strictly up to you. Our offer of $130.00 per share extends until the end of January 1979.
* * *"
In January 1979, appellant went to the company's offices and told appellee Patricia Hipp that she had decided to sell her seven hundred eighty shares of MCI stock to the company for $130 each. At the time, the book value of the shares was $251.81. Appellant presented evidence that each share could be valued between $600 to $800 a piece by applying a formula using a multiplier based on earnings. Appellant conceded that because Cleveland Trust had sold shares back to the company at $130 per share, "I thought if Cleveland Trust thought it was a fair price, it must be a fair price."
According to the deposition testimony of appellant and appellee Patricia Hipp, appellee told appellant that MCI was planning to invest in real estate. As a result, the company wanted to terminate the redemption offer by the end of January 1979 so that MCI would know how much cash would be available for that purpose. The depositions of appellant and appellee Patricia Hipp revealed that the company did invest in real estate.
Appellant had purchased small amounts of publicly-traded stock for over twenty years. However, the only closely-held shares she had ever owned were those of MCI. Before selling her shares back to the company, she did not ask appellees for any information or financial statements about the company. As a shareholder who had attended some annual shareholders meetings, appellant acknowledged she knew that financial information was available to all shareholders.
By 1988, all of the outstanding shares of MCI were either redeemed by the company or owned by appellees and their children. The value of the company, and the stock, had increased greatly.
In 1989, another minority shareholder sent appellant copies of MCI's financial statements for the year ending December 31, 1978. Based on the financial statements, appellant was able to learn that the book value of the shares was higher than the $130 per share price MCI paid her in January 1979.
In 1992, appellant filed a complaint about her sale of shares to MCI. She amended the complaint to request rescission of the sale of stock. She voluntarily dismissed the complaint in November 1995. She filed this action on November 25, 1996, claiming fraud, breach of fiduciary duty, and unjust enrichment and seeking recision and punitive damages.
Appellees filed a motion to dismiss, which the trial court converted to a motion for summary judgment. Appellees argued: (1) statutes of limitations barred appellant's claims of breach of fiduciary duty and unjust enrichment; (2) plaintiff had not alleged any actionable misrepresentation in her claims for fraud and breach of fiduciary duty; (3) no independent cause of action exists to recover punitive damages alone, and (4) plaintiff's delay in bringing suit barred a remedy of recision.
In granting the motion for summary judgment, the trial court found plaintiff had come forward with no evidence to suggest the majority stockholders used their power to promote their personal interests at the expense of the corporate interests or minority shareholders to support a claim of breach of fiduciary duty. It found that appellant's claim for breach of fiduciary duty was also time barred.
The court found that even viewing the facts in a light most favorable to appellant, she had created no factual issues on elements to support a claim of fraud. It determined that appellant's claim for unjust enrichment was barred by the statute of limitations. As a result, the trial court found that plaintiff's claim for punitive damages failed since it could not stand alone. Finding appellant had delayed five years before filing a complaint for recision, the trial court determined she could not maintain a claim of recision because of her unreasonable delay.
This court reviews a trial court's award of summary judgment under a de novo standard of review. Coventry Twp. v.Ecker (1995), 101 Ohio App.3d 38, 41; McGee v. Goodyear AtomicCorp. (1995), 103 Ohio App.3d 236, 241. The standard used by this court in determining this appeal is found in Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293:
 "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56 which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (Emphasis in original.)
Appellant first asserts the trial court erred by finding appellees had no fiduciary duty toward appellant, which would have required appellees to disclose that this was not a one-time only redemption and that the value of each share of stock was higher than $130. Appellant also contends that because one of the appellees was her cousin as well as a majority shareholder, appellees had an increased fiduciary obligation to advise her that her shares might be more valuable than the $130 being offered to redeem them.
"As this court has discussed previously, shareholders in a close corporation generally have a heightened duty to one another which includes a duty to disclose." Terry v. Carney (Dec. 29, 1995), Ottawa App. No. OT-94-054, unreported. Majority shareholders owe minority shareholders a fiduciary duty, whereby the majority shareholders owe minority shareholders good faith, loyalty, disclosure, and an obligation to refrain from self-dealing.Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108. Absent a legitimate business purpose, majority shareholders in a close corporation owe a duty to all minority shareholders not to utilize their majority control to their own advantage without providing minority shareholders with an equal opportunity to benefit. Crosby v. Beam (1989),47 Ohio St.3d 105, at paragraph two of the syllabus. The heightened fiduciary duty of majority shareholders in a closely held corporation arises from the opportunity for oppressive majority control and the limited market for minority shares. Id. at 108.
A party in a business transaction with another with whom he is in a fiduciary relationship must fully disclose material facts known to him but not to the other. Blon v. BankOne, Akron, N.A. (1988), 35 Ohio St.3d 98, 101. Although access to company books alone may not negate a fiduciary duty, the duty to disclose is limited where the party complaining knew, or should have made reasonable attempts to discover such information. Terryv. Carney, supra; Miller v. McCann (Dec. 26, 1997), Hamilton App. No. C-970035, unreported; Isroff v. Wes1hall Co. (Feb. 21, 1990), Summit App. No. 14184, unreported (no affirmative duty to disclose where shareholder had ready access to all relevant information or failed to make reasonable attempts to discover such information).
After a careful review of the record, we find that appellant did not produce evidence to create a genuine issue of material fact as to whether appellees breached a fiduciary duty by offering all minority shareholders the same opportunity to redeem stock as had been given to one minority shareholder. CompareEstate of Schroer v. Stamco Supply, Inc. (1984), 19 Ohio App.3d 34
(controlling shareholders breach fiduciary duty when they do not allow minority shareholders to sell their stock to the corporation under similar terms and prices offered to members of the controlling group). Here, MCI offered to redeem shares from all shareholders with the same price and terms that had been established in an arms-length transaction with a financial institution in 1978. That bank, in turn, had a fiduciary obligation to its customer to sell those shares at a reasonable value.
Nor can we find a breach of fiduciary duty based on lack of disclosure where appellant provided no evidence to suggest she made reasonable efforts to discover whether the $130 offer was anything other than fair at the time she decided to sell her shares. Although majority shareholders have no duty to disclose "soft information, such as speculations and forecasts of potential future value, majority shareholders must fully disclose information which they know as a result of their positions to minority stockholders who do not have the information. Terry,supra; Taylor v. Moraitis (Nov. 2, 1995), Franklin App. No. 95APE04-404, unreported (citations omitted).
Appellant presented no evidence to show appellees knew special circumstances existed to make the stock worth more than $130 per share. Appellant conceded at deposition that she could find no false statements in the letter sent to her and was not aware at that time of any wrongful self-dealing by appellees. Appellant acknowledged she made no efforts to learn whether the value of the shares was higher than the $130 paid by the bank. Both parties admitted that financial statement information was available to appellant had she asked for it. While perhaps not a sophisticated investor, appellant had some experience with buying and selling stock.
Both appellant and appellee acknowledged that at the time the company redeemed her shares, neither recalled they had entered an "Option Agreement" in 1973 permitting appellees to buy appellant's shares at eighty percent of their book value. Even if appellant had offered her stock to appellees under the Option Agreement, appellees were, by its terms, free to decline to purchase the shares. To redeem the shares, appellees would have had to pay appellant eighty percent of book value at the same time the company was offering to redeem those shares at approximately half that amount.
The letter did not explain why there was a deadline. The evidence showed appellant had already decided to sell her shares under the terms offered in the letter when she appeared at the company offices. Once there, appellee Patricia Hipp personally explained to appellant that the company was evaluating whether to invest in real estate. Given these facts and appellant's background in buying shares, appellant's subjective perception that the company would never again offer to redeem shares is not reasonable.[1] Other than her interpretation, appellant showed no genuine issues of fact existed as to whether appellees breached a fiduciary duty by restricting the time period in which minority shareholders could redeem their shares.
The trial court did not err in granting summary judgment to appellees on the breach of fiduciary duty claim where appellant provided no proof that appellees had used their majority control or affirmatively concealed or failed to disclose information that the stock had a greater value than $130 to gain an advantage for themselves over minority shareholders such as appellant. Majority shareholders have no obligation to advise minority shareholders on the wisdom of their financial investment decisions.
Appellant next asserts that the same facts underlying her claim for breach of fiduciary duty show appellees used fraud to induce her to sell her shares to MCI. The Ohio Supreme Court has defined the elements of fraud as follows:
 "(a) a representation or, where there is a duty to disclose, concealment of a fact,
"(b) which is material to the transaction at hand,
 "(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
 "(d) with the intent of misleading another into relying upon it,
 "(e) justifiable reliance upon the representation or concealment, and
 "(f) a resulting injury proximately caused by the reliance."
Cohen v. Lamko (1984), 10 Ohio St.3d 167, 169 (citations omitted).
Like the trial court, we find that the letter was not fraudulent on its face and contained no misrepresentations. Other than appellant's interpretation of the letter, there is no evidence that appellees made a false representation or concealed a fact they had a duty to disclose. According to appellant, she understood the letter to state that because cash would only be available for a limited time, there would never be another opportunity to sell her stock to MCI. She again argues that appellees had a duty to disclose that each share was worth more than the $130 price established in the transaction with the bank.
Appellant produced no evidence of false statements to support her claim for fraud. Appellant conceded at deposition that she could not identify any false statements in the letter. Based on our analysis that appellees breached no fiduciary duty toward appellant, we also find appellees had no duty to disclose that the shares may have carried a greater value on the financial statements when appellant could have easily acquired this information. Appellant produced no evidence to show appellees withheld any information.
Similarly, we have found no law that suggests majority shareholders must disclose that their future intentions include never offering to buy back stock or never attempting to acquire all outstanding shares. Plaintiff's interpretation that there would never be another stock redemption does not transform an innocuous statement into a false one. Further, appellant's interpretation pertains to future action or conduct which cannot serve as a basis for fraud. Tibbs v. National Homes Constr. Corp.
(1977), 52 Ohio App.2d 281.
Although appellant produced evidence to create a genuine issue of material fact about the value of the stock on December 21, 1978, that evidence does not create a question of fact as to whether appellees knew the value was higher than $130 per share — or had an affirmative obligation to disclose that the stock had a value in excess of $130. The heightened fiduciary duty placed on majority shareholders of closely held corporations arises from the very fact that the company's stock is difficult to market and value.
In addition to two estimates of the stock value, the trial court reviewed an option agreement which appellant and appellees executed in 1973. In that agreement, appellant granted to appellees the right to buy her shares at eighty percent of book value in the event she chose to sell her shares. Neither appellee nor appellant remembered that it existed.
Similarly, we find that appellant did not submit evidence which created a genuine issue of fact as to whether appellees intended to mislead her. Appellant asks us to infer such intent by using the benefit of hindsight and the fact the company prospered after she sold her stock.
We cannot conclude appellant was justified in relying solely upon the representations in the December 21, 1978 letter. She was an experienced investor who was aware financial information about the company was available to her in making a decision whether to buy the stock at the price offered or continue to hold it with its attendant risk of decline or the possibility of an increase in value. We reject appellant's argument that "book value is not information that would be routinely found in corporate records" because some mathematics may be required to calculate book value.
Even if appellant's claims for breach of fiduciary duty and unjust enrichment were viable, they are barred by statutes of limitations. A claim for breach of fiduciary duty must be brought within four years of the alleged breach. R.C. 2305.09(D). Appellant did not learn that she might have sold her stock at a better price until another shareholder sent her financial statements in 1989, ten years later. She did not file her first lawsuit until 1992. Because the discovery exception for fraud does not apply to claims for breach of fiduciary duty, appellant's claims are barred by the statute of limitations. Investors REITOne v. Jacobs (1989), 46 Ohio St.3d 176.
An action in unjust enrichment arises when a party retains money or benefits which, in justice and equity, belong to another. Liberty Mut. Ins. Co. v. Industrial Comm. of Ohio
(1988), 40 Ohio St.3d 109. An action for unjust enrichment must be brought within six years of the alleged unjust enrichment. R.C.2305.07. Again, there is no exception to measure the statute of limitations from the time the alleged unjust enrichment was discovered as there is for fraud. Palm Beach Co. v. Dun Bradstreet, 106 Ohio App.3d 167, 175 (1995).
Finally, we address appellant's claims that she should have been permitted to pursue the remedies of recision and punitive damages. We agree with the trial court's determination that appellant waited seven years after she received financial statements to request recision. See Morgan v. Virginian JointStock Land Bank (1931), 41 Ohio App. 558, 561. Because a lawsuit may not be maintained solely for punitive damages, and summary judgment was proper on appellant's underlying claims of breach of fiduciary duty, fraud, and unjust enrichment, appellant has no basis on which to seek punitive damages. Bishop v. Grdina (1985),20 Ohio St.3d 26, 28 (1985).
Accordingly, we find appellant's assignment of error not well-taken.
On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Huron County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
 Peter M. Handwork, P.J.
 George M. Glasser, J.
 James R. Sherck, J.
CONCUR.
[1] Appellant argues that the trial court wrongfully considered her credibility when it disposed of appellant's subjective interpretation of the letter as "not credible." While perhaps not the best choice of words to dispose of a summary judgment matter, we understand the trial court to mean even drawing all reasonable inferences in favor of appellant, her subjective interpretation did not create a genuine issue of material fact. We agree.