OPINION
{¶ 1} Plaintiffs-appellants, Estate of William A. Millhon and Thelma Millhon ("Mrs. Millhon") (collectively, "appellants"), appeal from the Franklin County Court of Common Pleas' entry of summary judgment in favor of defendants-appellees, The Millhon Clinic, Inc. ("Clinic"), Edward M. Chernick, M.D., Susan D. Borchers, M.D., Paul S. Morton, M.D., Kevin J. Anderson, M.D., and Robert L. Thompson, M.D. *Page 2 
(collectively, "appellees"). Finding no error in the trial court's entry of summary judgment, we affirm.
 {¶ 2} The Clinic is an Ohio close corporation, whose shareholders, at all relevant times, consisted of William A. Millhon, M.D. ("Dr. Millhon"), and the individually named appellees. After business hours on or about June 1, 1999, Clinic physicians handed Dr. Millhon a letter of termination, informing him that his employment would terminate on July 2, 1999, and requesting that he consider retiring as of that date in lieu of termination. The letter expresses concerns about "severe financial pressures [facing the Clinic], including potential default on [a] loan * * * and [the Clinic's] office lease." The letter states: "Over the past few months it has become evident to us that there is no way for you to increase your production to the point of being self sufficient and not requiring subsidy from the other group members." The letter describes Dr. Millhon's termination as "an attempt to rectify the [Clinic's] financial position." According to Drs. Chernick and Morton, by April 1999, Dr. Millhon owed a deficit to the Clinic in excess of $50,000, based on the variance between Dr. Millhon's receipts and overhead expenses.
 {¶ 3} Although the termination letter provided that his employment would continue until July 2, 1999, Dr. Millhon did not return to the Clinic after receiving the termination letter, nor did he speak with any of the other Clinic physicians about his termination. Dr. Millhon testified that, two days after receiving the termination letter, he spoke with a Clinic secretary who informed him that he had no appointments and that his office was closed. Dr. Millhon's son retrieved Dr. Millhon's personal effects from the Clinic shortly after his termination, by which time the personal effects had been removed *Page 3 
from his office and placed in a cardboard box. Appellants claim that appellees damaged Dr. Millhon's personal effects when removing them from his office.
 {¶ 4} After Dr. Millhon's termination, the Clinic sent a letter, dated June 10, 1999, to Dr. Millhon's patients. In pertinent part, the letter stated: "It is with our deepest regrets, we inform you that [Dr. Millhon] is unable to continue seeing patients at the Millhon Clinic. We believe it is important to maintain continuity and the quality of your medical care. We therefore urge you to select another primary care physician to coordinate your care." The letter did not state either that Dr. Millhon had been terminated or that he was impaired in any way. In a letter dated August 6, 1999, the Clinic's office manager, Linda Davis, notified Unum Provident Corp. ("Unum"), an insurance company that issued Dr. Millhon two personal disability income policies (the "Unum policies"), of Dr. Millhon's termination and requested that the change be reflected in the Clinic's premium billings for August/September 1999.
 {¶ 5} This is the third legal action commenced by either Dr. Millhon or his estate stemming from Dr. Millhon's termination. Dr. Millhon originally filed suit against appellees on June 1, 2000, in Franklin County Court of Common Pleas case No. 00CVH06-4834. Dr. Millhon voluntarily dismissed that action without prejudice on December 28, 2001, before the trial court entered judgment, and he refiled his claims on August 19, 2002. Dr. Millhon's refiled action was removed to the Federal District Court for the Southern District of Ohio. On February 23, 2003, during the pendency of his refiled action, Dr. Millhon died. After Dr. Millhon's counsel filed a suggestion of death, but failed to file a timely motion for substitution as required by Fed.R.Civ.P. 25, the district court dismissed Dr. Millhon's refiled action without prejudice on July 31, 2003. *Page 4 
Appellants filed this action on July 6, 2004, in the Delaware County Court of Common Pleas, and, pursuant to an agreed order, the case was transferred to the Franklin County Court on Common Pleas on August 9, 2004.
 {¶ 6} In their First Amended Verified Complaint, appellants set forth six claims for relief: (1) negligent infliction of emotional distress; (2) breach of fiduciary duty; (3) property damage; (4) a claim, pursuant to R.C. 1701.37, which codifies a shareholder's right to inspect a corporation's books and records; (5) breach of contract; and (6) fraudulent inducement.
 {¶ 7} On May 27, 2005, appellees filed a motion for summary judgment on all claims. Having received no opposing memorandum, the trial court granted appellees' unopposed motion and entered summary judgment in favor of appellees on July 22, 2005.
 {¶ 8} On August 19, 2005, appellants moved the trial court for relief from judgment, pursuant to Civ.R. 60(B), and filed a notice of appeal from the trial court's entry of summary judgment. In their Civ.R. 60(B) motion, appellants argued that they were unaware of appellees' motion for summary judgment until after receiving the trial court's judgment entry. This court, having received the record upon appellants' filing of their notice of appeal, remanded the matter to the trial court for a determination of appellants' motion for relief from judgment. On remand, the trial court granted appellants' Civ.R. 60(B) motion and vacated its prior judgment entry.
 {¶ 9} Appellants filed a memorandum in opposition to appellees' motion for summary judgment on July 12, 2006, and appellees filed a reply memorandum on October 12, 2006. *Page 5 
 {¶ 10} On March 13, 2007, the trial court issued a decision and entry, again granting appellees' motion for summary judgment. The trial court concluded that appellees were entitled to summary judgment on appellants' claims for negligent infliction of emotional distress, property damage, and fraudulent inducement because such claims were barred by the applicable statutes of limitations. The court further concluded that no genuine issue of material fact existed as to appellants' claims for breach of fiduciary duty, violation of R.C.1701.37, and breach of contract, and that appellees were entitled to judgment as a matter of law on such claims. Accordingly, the trial court entered judgment in favor of appellees on all of appellants' claims for relief. Appellants filed a motion for reconsideration on March 26, 2007, which the trial court denied.
 {¶ 11} Appellants filed a timely notice of appeal from the trial court's entry of summary judgment, and they presently assert a single assignment of error:
 THE TRIAL COURT ERRED IN SUSTAINING [APPELLEES'] MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS.
Appellants' brief sets forth two issues presented for review:
 [I.] Whether the savings provisions in [R.C. 2305.19] oblige the Court to overrule the Motion for Summary Judgment relating to the Statute of Limitations concerning personal property of the Appellee [sic] that the Court felt was subject to [R.C. 2305.10(A)].
 [II.] Does a controlling [shareholder] in a close corporation owe heightened fiduciary duty to minority shareholders and, absent a legitimate business purpose, such shareholders cannot use their control to their advantage without providing the same opportunity to other shareholders? *Page 6 
While appellants' assignment of error purports to contest the trial court's entry of summary judgment in its entirety, the issues presented concern only their claims for property damage and breach of fiduciary duty. Further review of appellants' brief reveals no argument with respect to the trial court's judgment on appellants' claims for negligent infliction of emotional distress or fraudulent inducement, which the trial court concluded were time-barred, or with respect to their claims for violation of R.C. 1701.37 or breach of contract. Accordingly, we restrict our consideration to appellants' remaining claims for property damage and breach of fiduciary duty.
 {¶ 12} Appellate review of summary judgment is de novo. Koos v. Cent.Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v.Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. Thus, we apply the same standard as the trial court and conduct an independent review, without deference to the trial court's determination. Maust v.Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107; Brown at 711.
 {¶ 13} Pursuant to Civ.R. 56(C), a court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one *Page 7 
conclusion, that conclusion being adverse to the non-moving party.Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 14} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107. Once the moving party meets its initial burden, the non-movant bears a reciprocal burden to produce competent evidence of the types listed in Civ.R. 56(C) showing that there is a genuine issue for trial. Id.; Civ.R. 56(E). Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party. Murphy v.Reynoldsburg, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95.
 {¶ 15} In their first issue presented, appellants question whether Ohio's savings statute, R.C. 2305.19, precludes summary judgment on their property damage claim, which stems from appellees' removal of Dr. Millhon's personal effects from his office in June 1999.
 {¶ 16} Appellees argued in their motion for summary judgment that appellants' property damage claim was barred by the two-year statute of limitations set forth in R.C. 2305.10(A) and that the savings statute was inapplicable. In their memorandum contra, appellants did not respond to appellees' limitations argument. The trial court concluded that appellants' claim for property damage accrued shortly after June 2, 1999, and that the limitations period on such claim expired in 2001. Because appellants did not file *Page 8 
their complaint in this action until 2004, the trial court concluded that appellants' claim for property damage was time-barred.
 {¶ 17} Appellants now contend that the trial court erred by failing to apply the savings statute to their property damage claim. Ohio's savings statute, R.C. 2305.19(A), provides:
 In any action that is commenced * * * if the plaintiff fails otherwise than upon the merits, the plaintiff or, if the plaintiff dies and the cause of action survives, the plaintiff's representative may commence a new action within one year after the date of * * * the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later. * * *
Where a plaintiff's timely commenced action fails otherwise than upon the merits after the statute of limitations has run, the savings statute permits the plaintiff to refile the action within one year. However, a plaintiff may take advantage of the savings statute to refile a case only once. Thomas v. Freeman, 79 Ohio St.3d 221, 227, 1997-Ohio-395;Hancock v. Kroger Co. (1995), 103 Ohio App.3d 266.
 {¶ 18} Appellants do not dispute that the two-year statute of limitations set forth in R.C. 2305.10(A) applies to their property damage claim or that such claim accrued in June 1999, when appellees allegedly removed Dr. Millhon's personal belongings from his office. Dr. Millhon's original complaint, filed June 1, 2000, timely asserted the same property damage claim asserted here. Dr. Millhon's voluntary dismissal of his original complaint, pursuant to Civ.R. 41(A)(1), constituted a failure otherwise than upon the merits within the meaning of the savings statute. Frysinger v. Leech (1987), 32 Ohio St.3d 38, paragraph two of the syllabus. When Dr. Millhon refiled his complaint in 2002, the statute of limitations on his property damage claim had expired, and such claim was *Page 9 
timely only by application of the savings statute. In fact, in his refiled complaint, Dr. Millhon specifically alleged that he was refiling within one year of his prior voluntary dismissal, as required for application of the savings statute. Because Dr. Millhon utilized the savings statute to refile his complaint in 2002, he may not take advantage of the savings statute again. See Thomas at 227. Therefore, the statute of limitations having expired in 2001, appellants' property damage claim is time-barred. Accordingly, the trial court did not err in entering summary judgment in favor of appellees on that claim.
 {¶ 19} Appellants' second issue presented relates solely to their claim for breach of fiduciary duty. There, appellants ask whether controlling shareholders in a close corporation owe a heightened fiduciary duty to minority shareholders and whether controlling shareholders may use their control to their advantage without providing the same opportunity to minority shareholders. As the trial court aptly recognized, Ohio Supreme Court case law clearly answers the general questions posed by appellants' second issue.
 {¶ 20} Ohio courts recognize a heightened fiduciary duty between majority or controlling shareholders and minority shareholders in a close corporation. Crosby v. Beam (1989), 47 Ohio St.3d 105, 108. Majority or controlling shareholders in a close corporation breach their heightened fiduciary duty to minority shareholders when they use control of the corporation to prevent the minority from having an equal opportunity in the corporation. Id. at 109. Thus, control of the stock in a close corporation may not be used to give the majority benefits the minority does not share. Id. In Crosby, at paragraph two of the syllabus, the Supreme Court held that, "[w]here majority or *Page 10 
controlling shareholders * * * breach their heightened fiduciary duty to minority shareholders by utilizing their majority control * * * to their own advantage, without providing minority shareholders with an equal opportunity to benefit, such breach, absent any legitimate business purpose, is actionable." Nevertheless, despite having established these general propositions of law regarding fiduciary relationships between shareholders in a close corporation, appellants do not cogently identify any error in the trial court's entry of summary judgment on their breach of fiduciary duty claim.
 {¶ 21} In response to appellees' motion for summary judgment, appellants primarily focused their arguments regarding their breach of fiduciary duty claim on establishing a genuine issue of fact as to whether appellants had a legitimate business purpose for terminating Dr. Millhon. Appellants also argued that appellees breached fiduciary duties to Dr. Millhon by taking action with respect to two non-cancellable disability income policies issued to Dr. Millhon by Unum and by excluding him from shareholders' meetings and income disbursements. Despite the broad allegations in appellants' memorandum contra, however, Dr. Millhon testified that the only way in which he was treated differently from other shareholders was that he was terminated:
 Q. Do you believe that you were treated less favorable than the other shareholders?
 A. Yes.
 Q. Could you describe to me how?
 A. Well, just the way they fired me. No discussion, just hand me a letter and say you're terminated and I can't even get an appointment after that. No discussion, nothing, which is not legal. *Page 11 
 Q. Other than the termination, are there other ways in which you felt you were treated less favorably than the other shareholders?
 A. Not really.
(Millhon Depo. at 45.) Based on Dr. Millhon's own testimony, and absent any other supporting evidence, we find that the trial court properly rejected appellants' arguments of breach of fiduciary duty stemming from any alleged exclusion from meetings and income disbursements.
 {¶ 22} On appeal, appellants' arguments regarding their breach of fiduciary duty claim center on Dr. Millhon's Unum policies, his termination, and appellants' assertion that appellees took Dr. Millhon's shareholder interest without due process of law. Upon review, we find no genuine issue of material fact with respect to appellants' breach of fiduciary duty claim.
 {¶ 23} We first address appellants' claim that appellees breached a fiduciary duty to Dr. Millhon by terminating his Unum policies without a legitimate business purpose. In support of their claims regarding the Unum policies, appellants submitted an affidavit from Ben F. Hadley, Jr., CLU, Dr. Millhon's insurance agent, who procured the issuance of the Unum policies in 1972 and 1985 respectively. According to Hadley, only Dr. Millhon, as the owner, could cancel the Unum policies. During his employment, the Clinic paid Dr. Millhon's premiums on the Unum policies. However, in August 1999, the Clinic notified Unum that Dr. Millhon had been terminated, effective July 1, 1999, and requested that the premiums for Dr. Millhon's policies be removed from the Clinic's future billings. Contrary to Dr. Millhon's unsupported allegations, the Clinic did not terminate the Unum policies. Indeed, Mr. Hadley clearly states in his affidavit that only *Page 12 
Dr. Millhon could terminate the policies and that the Clinic had no authority or interest to do so. In letters dated August 12, 1999, Unum attempted to notify Dr. Millhon that it would no longer bill the premiums for his policies to the Clinic and to provide Dr. Millhon with payment options for continuing his coverage.[1] Clearly, the Clinic had a legitimate business purpose for notifying Unum of Dr. Millhon's termination so that Unum would cease billing the Clinic for Dr. Millhon's premiums. Accordingly, we find no genuine issue of material fact as to whether appellees breached a fiduciary duty to Dr. Millhon by their actions with respect to the Unum policies.
 {¶ 24} Appellants also argue that appellees breached a fiduciary duty to Dr. Millhon by removing his shareholder rights without due process of law. We decline to address that argument because appellants made no such argument in the trial court. An appellant's failure to raise issues to the trial court precludes the appellant from raising them on appeal.Neubauer v. Ohio Remcon, Inc., Franklin App. No. 05AP-946,2006-Ohio-1481, at ¶ 36, citing State ex rel. Zollner v. Indus.Comm., 66 Ohio St.3d 276, 278, 1993-Ohio-49.
 {¶ 25} We turn now to the question of whether Dr. Millhon's termination itself constituted a breach of fiduciary duty. As noted above, Dr. Millhon testified that his termination was the only way he was treated differently from other Clinic shareholders. Ohio courts have held that majority or controlling shareholders in a close corporation cannot terminate a minority shareholder-employee without a legitimate business purpose. Thomas v. Fletcher, Shelby App. No. 17-05-31,2006-Ohio-6685, at ¶ 15, *Page 13 
citing Duggan v. Orthopaedic Inst. of Ohio (N.D.Ohio 2005), 365 F.Supp.2d 853, 863; Gigax v. Repka (1992), 83 Ohio App.3d 615, 623; see, also, Gray-Jones v. Jones (2000), 137 Ohio App.3d 93, 107 (stating that, although controlling shareholders owed appellant, a minority shareholder, a heightened fiduciary duty, they terminated her for a legitimate business purpose). In its decision granting summary judgment in favor of appellees, the trial court found that the evidence undisputedly demonstrated that appellees had a legitimate business purpose for terminating Dr. Millhon's employment. Viewing the evidence most strongly in favor of appellants, we agree.
 {¶ 26} In their affidavits, Drs. Chernick and Morton stated that the Clinic was facing severe financial pressure, including potential defaults on a loan and its office lease. Mrs. Millhon confirmed that Dr. Millhon himself had expressed worry about the Clinic's financial health prior to his termination. According to Drs. Chernick and Morton, the Clinic terminated Dr. Millhon's employment based mainly on "his growing deficit" to the Clinic. (Chernick Affidavit at ¶ 14; Morton Affidavit at ¶ 8.) Outside consultants hired by the Clinic to audit its business practices noted the continuing problem with Dr. Millhon's deficit, which Dr. Morton characterized as a "significant factor" in the Clinic's financial crisis. (Morton Affidavit at ¶ 2.)
 {¶ 27} Despite an allegation in their amended complaint, at ¶ 21, that "creative bookkeeping" created Dr. Millhon's deficit, appellants do not dispute that Dr. Millhon owed a deficit to the Clinic. Mrs. Millhon testified that she spoke with Sheila Layburn, the Clinic's administrator, several times prior to Dr. Millhon's termination regarding how Dr. Millhon could reduce his deficit by increasing his work schedule. Dr. Millhon himself acknowledged his deficit in an interoffice memo dated February 18, 1999. Moreover, *Page 14 
Mrs. Millhon testified in her deposition that she has no reason to doubt that Dr. Millhon's deficit and work schedule were the reasons for his termination.
 {¶ 28} In an effort to aid the Clinic's financial situation, Clinic physicians took reduced or no paychecks during a portion of 1999. Dr. Millhon specifically recalled other physicians taking reduced paychecks, and, based on conversations with Sheila Layburn, Mrs. Millhon understood that some Clinic physicians elected to take no salary. However, when the Clinic reduced Dr. Millhon's semi-monthly salary draw, Dr. Millhon sent a memorandum to the Clinic physicians acknowledging his deficit but requesting a lesser reduction.
 {¶ 29} Appellees' affidavits detail steps that appellees took to curb Dr. Millhon's deficit before resorting to termination. Dr. Chernick stated that he offered Dr. Millhon an option to maintain a reduced schedule and expenditures in return for a reduced salary, but that Dr. Millhon refused to reduce his salary. Similarly, Dr. Morton stated that he met with Dr. Millhon in December 1998 to discuss ways in which Dr. Millhon could reduce his overhead and met with Dr. Millhon again in April 1999 to discuss his growing deficit. In their memorandum contra appellees' motion for summary judgment, appellants acknowledged that appellees met with Dr. Millhon in early 1999 about his deficit. The foregoing evidence supports appellees' position that the Clinic terminated Dr. Millhon's employment for the legitimate business purpose, as stated in Dr. Millhon's termination letter, of rectifying the Clinic's precarious financial situation.
 {¶ 30} Appellants contest appellees' purported legitimate business purpose for terminating Dr. Millhon's employment, arguing that Dr. Millhon's deficit was the result of appellees charging him excessive expenses during his medical leave for knee surgery *Page 15 
in February 1998, and during his period of recovery, when he was seeing patients on a part-time basis. Appellants claim that other Clinic physicians were charged overhead on a pro-rata basis during periods of less than full-time work, whereas Dr. Millhon was charged full overhead costs during his medical leave and recovery. Specifically, relying on a Clinic Profit and Loss Statement for December 1998, appellants argue that Drs. Frair and Hoffman were charged overhead expenses on a pro-rata basis. Mrs. Millhon stated that the allegations regarding the accuracy of Dr. Millhon's deficit are based solely on the lower overhead charges assessed to Drs. Frair and Hoffman.
 {¶ 31} By affidavit, Dr. Chernick explained the Clinic's procedures for allocating expenditures and overhead costs to Clinic physicians. Attached to Dr. Chernick's affidavit is a document entitled Millhon Clinic Revenue and Expense Allocation Procedure. Consistent with the procedure detailed therein, Dr. Chernick stated that Clinic expenses fall into one of three categories: direct, production-based or fixed. Direct and production-based expenses are variable and attributed to individual physicians based upon factors such as support staff needed. On the other hand, fixed expenses do not change with the number of patients served.
 {¶ 32} The December 1998 Profit and Loss Statement upon which appellants rely shows that all Clinic physicians, with the exception of Drs. Frair and Hoffman, were charged equal fixed expenses. Dr. Chernick explained the lower fixed expenses charged to Dr. Hoffman, stating that Dr. Hoffman's productivity, overhead expenses, and salary had all decreased in anticipation of his retirement. Similarly, Dr. Chernick stated that Dr. Frair's reduced fixed expenses corresponded to her reduced, part-time schedule and correspondingly reduced salary. In her deposition, Mrs. Millhon agreed *Page 16 
that it was reasonable to charge a doctor who is paid a part-time salary a correspondingly smaller portion of the overhead expenses. Dr. Chernick testified that, although he offered Dr. Millhon a similar reduced schedule and expenditures in exchange for a reduced salary, Dr. Millhon refused to accept a reduced salary. Appellants present no evidence contesting Dr. Chernick's explanation of the reduced fixed expenses attributed to Drs. Frair and Hoffman, nor do appellants present evidence suggesting that Dr. Millhon was entitled to reduced overhead expenses while maintaining his full-time salary. Accordingly, we find no genuine issue of fact regarding appellees' legitimate business purpose for terminating Dr. Millhon's employment based on the allocation of fixed, overhead expenses.
 {¶ 33} Appellants also contest appellees' proffered legitimate business purpose for terminating Dr. Millhon's employment because other Clinic physicians maintained deficits at the time of Dr. Millhon's termination. The scant financial evidence in the record[2] does demonstrate that, as of May 1999, seven of the Clinic's 11 physicians showed year-to-date deficits and that ten of the 11 physicians showed cumulative deficits. Additionally, as of May 1999, one physician, Dr. Moffa, had a larger cumulative deficit than Dr. Millhon. This evidence, on its own, however, does not establish a genuine issue of material fact as to whether appellees had a legitimate business interest in terminating Dr. Millhon's employment.
 {¶ 34} The evidence in the record demonstrates that it was not the simple fact of Dr. Millhon's deficit that prompted his termination. Rather, the evidence suggests that *Page 17 
the Clinic's belief that Dr. Millhon would be unable to eliminate his deficit prompted the termination. Dr. Chernick noted that Dr. Millhon's deficit had "spiraled out of control" in early 1999 and that, by May 1999, "it became clear that there was no hope of turning Dr. Millhon's deficit around." (Chernick Affidavit at ¶ 9.) Dr. Chernick and Dr. Morton both testified about unsuccessful attempts to work with Dr. Millhon to remedy his growing deficit before resorting to termination. Specifically, Dr. Chernick noted Dr. Millhon's refusal to consistently reduce his salary even when his deficit continued to grow despite any accepted reductions in his salary draw. Dr. Chernick also stated that Dr. Millhon rejected an arrangement under which he would work a reduced schedule, in exchange for reduced overhead expenditures and a reduced salary. In contrast, the record contains no evidence regarding the circumstances surrounding Dr. Moffa's deficit or efforts by either the Clinic or Dr. Moffa to deal with that deficit. Accordingly, we find no genuine issue of material fact regarding the legitimacy of the Clinic's business purpose for terminating Dr. Millhon's employment based on the financial evidence in the record.
 {¶ 35} Viewing the evidence in the light most favorable to appellants, we find that appellees demonstrated a legitimate business purpose for terminating Dr. Millhon's employment. Moreover, the record establishes that no genuine issue of material fact remained regarding the legitimate business purpose that appellees claimed in support of Dr. Millhon's termination. Accordingly, we find that the trial court properly granted summary judgment in favor of appellees on appellants' claim for breach of fiduciary duty. *Page 18 
 {¶ 36} Lastly, appellants argue that the trial court failed to address the value of Dr. Millhon's shares in the Clinic and, in doing so, "essentially wiped out [appellants'] interest." Appellants assert that the shares are "at the root of this appeal" and that they would have presented evidence to "clearly [show] that certain value to be assigned to the shares of Dr. Millhon" would have been available to his estate. While the trial court did not address the value of Dr. Millhon's shares in the Clinic in its summary judgment decision, we find no error in that regard. Appellants' amended complaint contained no claim relating to the value of Dr. Millhon's shares in the Clinic and requested no relief regarding such value.
 {¶ 37} Appellants first made an argument regarding the value of Dr. Millhon's shareholder interest in their motion for reconsideration, filed March 26, 2007, after the trial court issued its decision and entry granting appellees' motion for summary judgment. This court has previously stated that a party may not assert a new claim by motion.Wright v. Sears, Roebuck Co. (Aug. 9, 1983), Franklin App. No. 83AP-153. Rather, the party must assert a new claim through an amended complaint. Id. At no time did appellants seek leave to file a second amended complaint to add a claim for valuation of Dr. Millhon's shareholder interest in the Clinic. Because appellants' amended complaint contained no claim relating to the value of Dr. Millhon's shares, the value of those shares was simply not before the trial court, and we find no error in the court's failure to address such a claim.
 {¶ 38} While appellants did raise an argument regarding the value of Dr. Millhon's shareholder interest in their motion for reconsideration, that motion was a nullity. The trial court's March 17, 2007 decision and entry disposed of all claims between all *Page 19 
parties. Pursuant to R.C. 2505.02(B)(1), an order is a final order when it "affects a substantial right in an action that in effect determines the action and prevents a judgment." For an order to determine the action and prevent a judgment, "it must dispose of the whole merits of the cause or some separate and distinct branch thereof and leave nothing for the determination of the court." Yavitch Palmer Co., L.P.A. v.U.S. Four, Inc., Franklin App. No. 05AP-294, 2005-Ohio-5800, at ¶ 8. In its March 13, 2007 decision and entry, the trial court resolved all of appellants' claims in favor of appellees, leaving nothing else to be determined by the court. Accordingly, it was a final judgment. While interlocutory orders are subject to motions for reconsideration, judgments and final orders are not. Pitts v. Ohio Dept. of Transp.
(1981), 67 Ohio St.2d 378, 379, fn. 1. After entry of final judgment, a motion for reconsideration is a nullity. Perritt v. Nationwide Mut. Ins.Co., Franklin App. No. 03AP-1008, 2004-Ohio-4706, at ¶ 12. Thus, appellants' motion for reconsideration was a nullity and, for this additional reason, we find no error in the trial court's lack of consideration of claims for the value of Dr. Millhon's shareholder interest.
 {¶ 39} Having found no error in the trial court's entry of summary judgment, we overrule appellants' single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BRYANT and TYACK, JJ., concur.
[1] Appellants argue that the August 12, 1999 letters from Unum were addressed to Dr. Millhon at a former address. However, appellants' actual receipt of the letters is irrelevant to whether appellees' action in notifying Unum of Dr. Millhon's termination constituted a breach of fiduciary duty.
[2] The financial evidence in the record consists solely of three spreadsheets, entitled Millhon Clinic Profit and Loss Statements for August 1998, December 1998, and May 1999. *Page 1