CROSBY ET AL., APPELLEES, *v.* BEAM ET AL., APPELLANTS.

[Cite as Crosby *v.* Beam (1989), 47 Ohio St. 3d 105.]

(No. 88-1516 — Submitted October 11, 1989 — Decided December 20, 1989.)

*David R. Pheils, Jr. & Associates* and *David R. Pheils, Jr.,* for appellees.

*Cooper, Straub, Walinski & Cramer, Keith A. Wilkowski* and *John L. Straub,* for appellants.

*Murray & Murray Co., L.P.A., Dennis S. Murray, Sr.* and *Kirk J. Delli Bovi,* urging affirmance for *amicus curiae,* Terrence P. Morris.

*Vorys, Sater, Seymour & Pease, Michael J. Canter* and *John J. Kulewicz,* urging reversal for *amici curiae,* Dale W. Van Voorhis, Gasper C. Lococo and Funtime, Inc.

DOUGLAS, J. The issue before us is whether the appellees' cause of action may be maintained as an individual action or whether dismissal was proper because the suit was not instituted as a Civ. R. 23.1 shareholder's derivative suit.

A shareholder's derivative action is brought by a shareholder in the name of the corporation to enforce a corporate claim.[1] Such a suit is an exception to the usual rule that a corporation's board of directors manages or supervises the management of a corporation. A derivative action allows a shareholder to circumvent a board's refusal to bring a suit on a claim. On the other hand, if the complaining shareholder is injured in a way that is separate and distinct from an injury to the corporation, then the complaining shareholder has a direct action. 2 O'Neal & Thompson, O'Neal's Close Corporations (3 Ed. 1987) 119-121, Section 8.11.

Appellants contend that this case should have been brought as a derivative action because appellees' amended complaint alleges only that the appellants-majority shareholders misappropriated corporate funds. This misappropriation directly affected the corporation, appellants contend, and only indirectly harmed the appellees-minority shareholders. Thus, the appellants argue that the appellees could not maintain this cause as a direct action.

## I
## Close Corporation

Typically, a close corporation is a corporation with a few shareholders and whose corporate shares are not generally traded on a securities market. 1 O'Neal & Thompson, O'Neal's Close Corporations (3 Ed. 1986) 2-3, Section 1.02. See, also, R.C. 1701.591.

Close corporations bear a striking resemblance to a partnership. In essence, the ownership of a close corporation is limited to a small number of people who are dependent on each

---

[1] Civ. R. 23.1 states that:

"In a derivative action brought by one or more legal or equitable owners of shares to enforce a right of a corporation, the corporation having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors and, if necessary, from the shareholders and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interest of the shareholders similarly situated in enforcing the right of the corporation. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders in such manner as the court directs."

other for the enterprise to succeed. Just like a partnership, the relationship between the shareholders must be one of trust, confidence and loyalty if the close corporation is to thrive. While a close corporation provides the same benefits as do other corporations, such as limited liability and perpetuity, the close corporation structure also gives majority or controlling shareholders opportunities to oppress minority shareholders. For example, the majority or controlling shareholders may refuse to declare dividends, may grant majority shareholders-officers exorbitant salaries and bonuses, or pay high rent for property leased from the majority shareholders.[2] *Donahue* v. *Rodd Electrotype Co. of New England, Inc.* (1975), 367 Mass. 578, 588-589, 328 N.E. 2d 505, 513.

Minority shareholders in a close corporation, denied any share of the profits by the majority shareholder's action, will either suffer a loss or try to find a buyer for their stock. This situation is contrasted with an oppressed minority shareholder in a large publicly owned corporation who can more easily sell his shares in such a corporation. Generally, there is no ready or available market for the stock of a minority shareholder in a close corporation. This presents a plight for a minority shareholder in a close cor-

poration who can become trapped in a disadvantageous situation from which he cannot be easily extricated. *Donahue, supra,* at 591-592, 328 N.E. 2d at 515.

## II

### Majority Shareholders' Fiduciary Duty in a Close Corporation

Generally, majority shareholders have a fiduciary duty to minority shareholders. *Jones* v. *H. F. Admanson & Co.* (1969), 1 Cal. 3d 93, 81 Cal. Rptr. 592, 460 P. 2d 464. Courts in sister states and Ohio appellate courts have found a heightened fiduciary duty between majority and minority shareholders in a close corporation.[3] This duty is similar to the duty that partners owe one another in a partnership because of the fundamental resemblance between the close corporation and a partnership. *Donahue, supra,* at 593, 328 N.E 2d at 515, found the standard of a duty to be of the " 'utmost good faith and loyalty.' "

Federal courts, applying what they found to be Ohio law, assumed the existence of a fiduciary duty between shareholders of a close corporation and particularly between majority and minority shareholders. In *United States* v. *Byrum* (1972), 408 U.S. 125, 137, the court stated in a case involving several Ohio close corporations that "[a] majority shareholder has a

---

[2] Whether this device is a freeze-out as stated in *Donahue, supra,* at 588-589, 328 N.E. 2d at 513, or a partial squeeze-out as identified in 1 O'Neal & Thompson, O'Neal's Oppression of Minority Shareholders (2 Ed. 1985) 1-2, Section 1:01, is not before us in this case.

[3] Cases in sister states include *Tillis* v. *United Parts, Inc.* (Fla. App. 1981), 395 So. 2d 618; *Alaska Plastics, Inc.* v. *Coppock* (Alaska 1980), 621 P. 2d 270; *Horizon House-Microwave, Inc.* v. *Bazzy* (1985), 21

Mass. App. 190, 486 N.E. 2d 70; and *Donahue* v. *Rodd Electrotype Co. of New England, Inc.* (1975), 367 Mass. 578, 328 N.E. 2d 505.

See, generally, the following Ohio appellate court cases: *Estate of Schroer* v. *Stamco Supply, Inc.* (1984), 19 Ohio App. 3d 34, 19 OBR 100, 482 N.E. 2d 975; *North* v. *Wick* (1957), 104 Ohio App. 332, 5 O.O. 2d 19, 144 N.E. 2d 132; and *Soulas* v. *Troy Donut Univ., Inc.* (1983), 9 Ohio App. 3d 339, 9 OBR 607, 460 N.E. 2d 310.

fiduciary duty not to misuse his power by promoting his personal interests at the expense of corporate interests."

Further, *Byrum, supra,* at 137-138, fn. 11, stated that:

"Such a fiduciary relationship would exist in almost every, if not every, State. Ohio, from which this case arises, is no exception: '[I]f the majority undertakes, either directly or indirectly, through the directors, to conduct, manage, or direct the corporation's affairs, they must do so in good faith, and with an eye single to the best interests of the corporation. It is clear that the interests of the majority are not always identical with the interests of all the shareholders. The obligation of the majority or of the dominant group of shareholders acting for, or through, the corporation is fiduciary in nature. A court of equity will grant appropriate relief where the majority or dominant group of shareholders act in their own interest or in the interest of others so as to oppress the minority or commit fraud upon their rights.' * * *'" (Citation omitted.)

Majority or controlling shareholders breach such fiduciary duty to minority shareholders when control of the close corporation is utilized to prevent the minority from having an equal opportunity in the corporation. *Donahue, supra,* at 598, 328 N.E. 2d at 518, and *Tillis* v. *United Parts, Inc.* (Fla. App. 1981), 395 So. 2d 618. Control of the stock in a close corporation cannot be used to give the majority benefits which are not shared by the minority. *Alaska Plastics, Inc.* v. *Coppock* (Alaska 1980), 621 P. 2d 270. As an example, in *Wilkes* v. *Springside Nursing Home, Inc.* (1976), 370 Mass. 842, 353 N.E. 2d 657, majority shareholders breached their fiduciary duty to the minority by removing a minority shareholder from the payroll of a close corporation, which had never paid a dividend, and there was no legitimate business purpose for the removal.

Given the foregoing, if we require a minority shareholder in a close corporation, who alleges that the majority shareholders breached their fiduciary duty to him, to institute an action pursuant to Civ. R. 23.1, then any recovery would accrue to the corporation and remain under the control of the very parties who are defendants in the litigation. Thus, a derivative remedy is not an effective remedy because the wrongdoers would be the principal beneficiaries of the recovery. See, generally, 2 O'Neal's Close Corporations, *supra,* at 120-123, Section 8.11.

Where majority or controlling shareholders in a close corporation breach their heightened fiduciary duty to minority shareholders by utilizing their majority control of the corporation to their own advantage, without providing minority shareholders with an equal opportunity to benefit, such breach, absent a legitimate business purpose, is actionable. Where such a breach occurs, the minority shareholder is individually harmed. When such harm can be construed to be individual in nature, then a suit by a minority shareholder against the offending majority or controlling shareholders may proceed as a direct action. This was just the situation in *Steelman* v. *Mallory* (1986), 110 Idaho 510, 716 P. 2d 1282, where the court held that a breach by majority shareholders-directors of their fiduciary duty to a minority shareholder was actionable directly, as opposed to requiring a shareholder's derivative action.

Accordingly, we hold that claims of a breach of fiduciary duty alleged by minority shareholders against shareholders who control a majority of

shares in a close corporation, and use their control to deprive minority shareholders of the benefits of their investment, may be brought as individual or direct actions and are not subject to the provisions of Civ. R. 23.1.

### III

### Plaintiffs-Appellees' Capacity to Sue

We must now determine if the complaint before us states an injury to the appellees upon an individual claim as distinguished from an injury which directly affects the corporation and only indirectly affects appellees. See *Adair* v. *Wozniak* (1986), 23 Ohio St. 3d 174, 23 OBR 339, 492 N.E. 2d 426.

Civ. R. 8(F) states that "[a]ll pleadings shall be so construed as to do substantial justice." The rule "* * * emphasizes the fact that pleadings shall be construed liberally * * *." Staff Notes to Civ. R. 8(F).

The complaint before us, in essence, alleges that the majority shareholders acted both separately and collectively to exclude the appellees from the corporation's profit. Seascape, the corporation, possessed characteristics consistent with an Ohio close corporation.

Arguably, Counts 1 through 5 of plaintiffs-appellees' amended complaint sound in the nature of claims that should be redressed through a derivative action and, therefore, appellees would be required to proceed in accordance with Civ. R. 23.1. Conversely, under a liberal construction, the matters pled in Counts 1 through 5 and clearly that matter pled in Count 7 can easily be construed as pleading claims that are not wholly derivative in nature. In effect, the claims are direct or individual claims for a breach of the fiduciary duty owed by the majority shareholders to the minority share-

holders in close corporations. Liberally construing the pleadings, we find that appellees properly brought this action as a direct action rather than as a shareholder's derivative action.

Since we have decided that it was proper for appellees to bring this case as an individual action, it is not necessary to address the standing of appellees to institute a Civ. R. 23.1 suit. Furthermore, it is unnecessary to decide, as urged by appellees, whether there is an exception to the standing requirements of Civ. R. 23.1, which exception would allow a former minority shareholder, who parted with his shares unaware of misappropriations by the corporate directors, to recover the amount by which the misappropriations had reduced the value of his prior shareholdings. See *Watson* v. *Button* (C.A.9, 1956), 235 F. 2d 235.

For the above-mentioned reasons, the trial court erred when it dismissed this action for failure to state a claim. Appellees' complaint alleges a breach of fiduciary duty which may be brought as a direct action. Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, H. BROWN and BROGAN, JJ., concur.

WRIGHT, J., concurs in part and dissents in part.

JAMES A. BROGAN, J., of the Second Appellate District, sitting for RESNICK, J.

WRIGHT, J., concurring in part and dissenting in part. I heartily agree with the majority's discussion of the effects of stock ownership in a close corporation, as compared to equity ownership in a corporation with a large number of

stockholders where the stock is publicly traded. Ofttimes the relationship between the shareholders in a close corporation is premised upon mutual confidence and trust. Ownership in a close corporation does indeed expose a minority stockholder to oppression by the majority. The trend of the law in this country is represented by *Donahue* v. *Rodd Electrotype Co. of New England, Inc.* (1975), 367 Mass. 578, 328 N.E. 2d 505. In that case the Massachusetts Supreme Court held that majority stockholders in a close corporation should be held to a strict standard of fiduciary duty when minority stockholders were, in effect, "frozen out" through exorbitant salaries, self-dealing and the like, and their ability to receive reasonable dividends was obviously undermined. There certainly is no ready market for the stock of a minority shareholder in a close corporation. The modern trend in the law has been to provide relief to a minority stockholder in a close corporation who is forced into an unfair situation from which he cannot extricate himself. *Donahue, supra,* at 591-592, 328 N.E. 2d at 514-515.

Accordingly, I accept the concept that in situations such as we may have here, we should impose upon majority shareholders a heightened fiduciary duty to minority shareholders in a close corporation and sanction a direct action against the alleged wrongdoers. Construing the pleadings in this case in the most liberal fashion, I believe Count 7 of plaintiff's complaint may state a cause of action for what amounts to a freeze-out. However, I am not prepared to accept the third paragraph of the syllabus announced by the majority outside the context of the facts alleged in this case. I am concerned that applying the third paragraph of the syllabus to a situation where there is no potential of demonstrating a freeze-out will amount to repeal of Civ. R. 23.1 as it relates to *all actions* by disgruntled minority shareholders in close corporations. To my mind this would be both unwise and outside our authority to, in effect, amend the Civil Rules in this manner. Thus, I would limit the syllabus law in this case to situations where the plaintiff can demonstrate an effort to "freeze him out" as a stockholder or where he is directly affected through loss of dividends, company employment or the like. Thus, I can concur only in paragraphs one and two of the syllabus in this case and in the judgment announced by the majority.