**HERBERT et al., Appellants,**

v.

**PORTER et al., Appellees.**

[Cite as *Herbert v. Porter*, 165 Ohio App.3d 217, 2006-Ohio-355.]

Court of Appeals of Ohio,
Third District, Seneca County.

No. 13–05–15.

Decided Jan. 30, 2006.

W. Evan Price II, D. David Carroll, Martin D. Koop, and Brent T. Howard, for appellants.

Anthony J. Calamunci and Amy L. Butler, for appellees.

SHAW, Judge.

{¶ 1} Plaintiffs-appellants, Susan and Larry Herbert, appeal the December 22, 2004 judgment entry of the Court of Common Pleas, Seneca County, Ohio, which effectuated the jury verdict, as well as the April 5, 2005 journal entry denying their motion for new trial and judgment notwithstanding the verdict.

{¶ 2} The underlying facts of this case are as follows. In 1988, the Herberts joined with defendant-appellant Janice Porter to form an Ohio corporation known as Professional Restaffing of Ohio, Inc. ("PRO"). From the date the company was formed, Porter owned 50 percent of the outstanding shares of PRO; the remaining 50 percent of the shares were divided equally between the Herberts. Then in 1990, the parties voted their shares and elected Susan Herbert, Janice Porter, and Porter's then husband Joseph Porter directors of PRO.

{¶ 3} PRO continued to operate for the next 15 years and by all accounts was a profitable business venture. At some point, however, the Herberts became dissatisfied with the compensation structure of the business, which was outlined in a 1988 corporate resolution that had been approved by a majority of PRO's directors and was signed by Porter and Susan Herbert. This resolution could be changed only through action taken by the board of directors, which was controlled by the Porters.

{¶ 4} Throughout this period, however, the shareholders of PRO never held director elections, except for the initial election in 1990. Therefore, the structure of the board of directors never changed, and the Herberts were unable to make their desired changes to the corporate resolution. Inexplicably, PRO's articles of incorporation are not included in the record before this court and were not listed as exhibits in the trial court. Therefore, we are unable to determine PRO's shareholder voting procedures, when a shareholder could call for an election of directors, or the length of the term a director would serve. However, the issue of whether elections should have been held on a regular basis does not appear to be contended between the parties.

{¶ 5} The Herberts were unhappy with the arrangement of the corporation and desired that Larry Herbert be elected as a director to replace Joseph Porter.

This issue, along with various other issues, went unresolved. Thereafter, the Herberts filed a complaint in November 2002 asserting various claims against Porter for breach of fiduciary duty and illegal conversion of assets. They later amended the complaint to add a claim calling for judicial dissolution of PRO.

{¶ 6} In August 2003, the Herberts called for a shareholder meeting to elect new directors. Susan Herbert and Janice Porter were both elected as directors. The parties could not come to an agreement on the third director, however, with the Herberts voting their 50 percent interest for Larry Herbert and Porter voting her 50 percent interest for Joseph Porter. As a result, the trial court found for the Herberts on the dissolution claim and ordered a judicial dissolution of PRO pursuant to R.C. 1701.91 because PRO contained an uneven number of directors and the shareholders were deadlocked in voting power. This court upheld that decision in *Herbert v. Porter*, Seneca App. No. 13–03–53, 2004-Ohio-1851, 2004 WL 765116.

{¶ 7} Subsequent to the judicial dissolution, a trial was held on the Herberts' remaining claims and on a claim for breach of fiduciary duty asserted by Porter in her answer to the Herberts' complaint. In that trial, Porter argued that the Herberts breached their fiduciary duties to her by calling for a "sham" shareholder meeting for the purpose of electing new directors, at which their sole purpose was to create a voting deadlock so they could obtain a judicial resolution of PRO. This dissolution, according to Porter, was the Herberts' sole means of getting out from under the 1988 corporate resolution because they were unable to change the terms of that resolution without having majority power on the board of directors.

{¶ 8} The trial court allowed Porter to make this argument over the Herberts' objection, and Porter succeeded in convincing the jury that the Herberts had breached their fiduciary duties to her in this manner. The jury returned a verdict in favor of Porter on that issue. Specifically, the jury answered the following interrogatory in the affirmative: "Do you find that Sue and Larry Herbert breached their fiduciary duty to Janice Porter by creating a deadlock after filing a claim for judicial resolution of PRO?" The jury then awarded $715,440.30 in damages to Porter on this claim.

{¶ 9} The Herberts then filed a motion for new trial and judgment notwithstanding the verdict, arguing that Porter's claim for breach of fiduciary duty by creating a deadlock was not supported by the law. The trial court overruled that motion in its April 5, 2005 judgment entry. The Herberts now appeal, asserting the following five assignments of error:

The trial court erred when it overruled Appellants' objections and allowed Appellee to present evidence that Appellants violated a fiduciary duty by obtaining an order dissolving [PRO] because no such cause of action is

recognized under Ohio law and entered judgment on the non-existent cause of action.

The trial court erred when it failed to follow doctrines of the law of the case and *res judicata* and, instead, entered judgment on Appellee's claim that the Appellants violated a fiduciary duty by obtaining an order dissolving PRO because the trial court had previously decided that dissolution was required and that judgment had been affirmed by this Court on appeal.

The trial court erred when it entered judgment on Appellee's claim that the Appellants violated a fiduciary duty by obtaining an order dissolving PRO because that claim arose after the filing of Appellee's counterclaim and no supplemental pleading was filed as required by Rule 15(E) of the Ohio Rules of Civil Procedure.

The trial court erred in entering judgment on a breach of contract claim against Appellants because no such claim was ever filed and the jury did not return a breach of contract verdict.

The trial court erred in entering judgment against Appellants for breaching their fiduciary duty by obtaining an order dissolving PRO based on the manifest weight of the evidence because the jury had also determined that Appellee had breached her fiduciary duty and converted PRO's assets.

■ {¶ 10} In their first assignment of error, the Herberts assert various theories for claiming that the trial court erred in allowing Porter to bring a claim for breach of fiduciary duty. Their underlying argument is that Porter is precluded from bringing this claim because her only asserted rationale for finding a breach of fiduciary duty was based on the fact that the Herberts had sought and obtained a judicial dissolution of PRO. Accordingly, we must determine whether a cause of action for breach of fiduciary duty arises when a deadlock occurs in shareholder voting during a director election in a close corporation. Because our review of this issue is a question of law, we apply a de novo standard of review. *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.* (1996), 76 Ohio St.3d 521, 524, 668 N.E.2d 889.

{¶ 11} The record in this case demonstrates that Porter's sole theory on her breach-of-fiduciary-duty claim was that the Herberts somehow breached a duty by creating a shareholder deadlock in order to obtain a judicial dissolution. This was the only theory presented by Porter in her case-in-chief, and it was the only theory argued before the jury in Porter's closing arguments. Moreover, the jury interrogatories applicable to this cause of action ask whether the jury found that the Herberts had breached their fiduciary duty "by creating a deadlock after filing a claim for judicial dissolution of PRO."

{¶ 12} It is widely recognized that shareholders in a close corporation—corporations "with few shareholders and whose corporate shares are not generally traded on a securities market"—owe each other a fiduciary duty to deal in utmost good faith. *Crosby v. Beam* (1989), 47 Ohio St.3d 105, 107–08, 548 N.E.2d 217; see, also, *Estate of Schroer v. Stamco Supply, Inc.* (1984), 19 Ohio App.3d 34, 19 OBR 100, 482 N.E.2d 975. This duty is heightened in close corporations to prevent majority shareholders from exercising their control "to prevent the minority from having an equal opportunity in the corporation." *Crosby*, 47 Ohio St.3d at 109, 548 N.E.2d 217.

{¶ 13} First, we must emphasize that Porter was not a minority shareholder—the shares of PRO were divided evenly between her and the Herberts, each side owning 50 percent of the corporation. Therefore, the "heightened" fiduciary duty would not apply in this case because Porter is not in the vulnerable position of being a minority shareholder. The courts recognize the "heightened" fiduciary duty because of the potential for the majority to "freeze out" minority shareholders. See *Estate of Schroer*, 19 Ohio App.3d at 38, 19 OBR 100, 482 N.E.2d 975. As the Supreme Court of Ohio explained:

> Minority shareholders in a close corporation denied any share of the profits by the majority shareholder's action will either suffer a loss or try to find a buyer for their stock. This situation is contrasted with an oppressed minority shareholder in a largely publicly owned corporation who can more easily sell his shares in such a corporation. Generally there is no ready or available market for the stock of a minority shareholder in a close corporation. This presents a plight for a minority shareholder. in a close corporation who can become trapped in a disadvantageous situation from which he cannot be easily extricated.

*Crosby*, 47 Ohio St.3d at 108, 548 N.E.2d 217. Thus, the court recognized, the majority shareholder breaches his fiduciary duty when he acts in such a way as to prevent the minority shareholder from having an equal opportunity to benefit from the corporation. Id. The court then listed several examples of a breach: the majority uses its power to prevent dividends from being declared, to grant exorbitant salaries or bonuses to majority shareholders, or to lease property owned by majority shareholders to the corporation at high rental rates. Id.

{¶ 14} The heightened fiduciary duty exists because of the precarious position that the minority shareholder is in; since Porter is not in this position in the instant case, there can be no breach of this duty. Practically speaking, the Herberts simply could not act to deprive Porter of the profits of the corporation while reserving all of the profits for themselves. There was no way to "freeze out" Porter because the Herberts were not in a majority-ownership position. What occurred in the instant case was not a "freeze out" of Porter from the

profits of PRO. Rather, Porter's essential argument is that she was deprived of the *future* benefits she foresaw as a PRO shareholder. Porter's argument is that the shares of PRO became essentially worthless after the trial court ordered that the company be dissolved. At that point, both parties were entitled to their proportionate share of the assets of the corporation, but there would no longer be any future "profits" to distribute between the parties; there would be no more income from the company's clients.

{¶ 15} Potential future income is not what the "heightened" fiduciary duty was meant to protect. This duty protects the minority only from being frozen out of *recognized* profits through bad-faith doings of the majority. See *Estate of Schroer*, 19 Ohio App.3d at 38–39, 19 OBR 100, 482 N.E.2d 975. There is nothing in the record to demonstrate that Porter was denied the recognized profits of PRO; she received salary and bonuses, she was not denied any dividends, and she received her proportionate share of the assets of the company upon dissolution. However, Porter is not entitled to a share of the future profits of the company—these profits have not yet been earned and are not a part of the dissolution of PRO.

{¶ 16} Porter mistakenly assumes that she is entitled to some portion of what PRO's income would have been due to her ownership status at the time of dissolution. In reality, Porter is seeking an award for damages for her lost clientele—after the dissolution, the majority of PRO's clients chose to do business with a new firm formed by the Herberts; thus, Porter claims that the Herberts "stole" PRO from her. At trial, Porter put forth evidence and testimony to demonstrate that PRO was worth approximately $1.5 million and then sought damages of half of that amount. That valuation was based on the recent financial history of the corporation and previous years' annual incomes; this number did not represent the value of the current assets of the company. It represented what the company could expect to make if operations continued. Thus, Porter's claim is not that she was deprived of anything the company had earned, but that she would no longer receive the *future* profits of the company because of the judicial dissolution. Essentially, she is asking this court to "guarantee" her client base by awarding her damages for the clients she lost to the Herberts after the dissolution. This is not a form of damages that is available to her after a judicial dissolution; PRO's former clients must be free to choose the company they will do business with in the future.

{¶ 17} Finally, Porter has not established that the Herberts acted in bad faith in obtaining a judicial dissolution. Porter argues that the Herberts acted in bad faith by intentionally creating a voter deadlock in order to obtain the dissolution. We find that the law in Ohio does not support a cause of action for breach of

fiduciary duty under this theory because a shareholder does not act in bad faith simply by voting her shares for the director she chooses.

{¶ 18} Put simply, the Herberts had every right to vote their shares as they saw fit. Ordinarily, directors are elected at an annual shareholder meeting in the manner provided for in the articles of incorporation. R.C. 1701.39. Although the articles of incorporation are not included in the record before this court, the record establishes that there was no director election after the initial election upon creation of PRO. Therefore, because no annual director election was held, the Herberts were entitled by law to call a special meeting for the purposes of electing new directors. R.C. 1701.39; R.C. 1701.40(A)(3). At that meeting, the Herberts were entitled to vote their shares for whichever candidates they desired. See R.C. 1701.55. There is no contention that these actions violated PRO's articles of incorporation or any shareholder agreement. In fact, Porter conceded at oral argument that the Herberts had acted within their rights as a shareholder.

{¶ 19} Accordingly, there can be no breach of fiduciary duty under these circumstances because there is no evidence of a bad-faith act on the part of the Herberts. Were we to allow Porter to bring this claim for breach of fiduciary duty under these circumstances, we would essentially be punishing the Herberts for asserting their legal rights as shareholders. Therefore, based on the foregoing analysis, appellants' first assignment of error is sustained.

{¶ 20} Having found that Ohio law does not support a cause of action for breach of fiduciary duty under the theory alleged by Porter, our determination under the first assignment of error renders the arguments raised in appellants' second, third, and fifth assignments moot, and we need not address them.

■ {¶ 21} Additionally, in their fourth assignment of error, the Herberts argued that the trial court erred in entering judgment on a breach-of-contract claim because no such claim was ever pleaded, argued, or submitted with the jury interrogatories or verdict form. This circumstance appears to have been a clerical error, whereby Porter's second claim for breach of fiduciary duty against Susan Herbert for taking excess bonuses without board approval was mislabeled as a breach-of-contract claim. However, after the issue was brought to the trial court's attention in the Herberts' motion for judgment notwithstanding the verdict, the trial court ordered that Porter submit a corrected judgment entry. That entry was not submitted to the trial court until after this appeal had commenced, but a modified judgment entry was filed by the trial court correcting this issue on August 23, 2005. Subsequently, this court ordered the trial court to supplement the record sua sponte, and the modified judgment entry is now on the record before this court. Accordingly, we find that the Herberts' fourth assign-

ment of error has been rendered moot by the filing of the modified judgment entry.

{¶ 22} Based on the foregoing, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

CUPP, P.J., concurs.

ROGERS, J., concurs in part and dissents in part.

ROGERS, Judge, concurring in part and dissenting in part.

{¶ 23} I concur with the majority on assignments of error one, two, three, and five. However, I respectfully disagree with the majority's result reached in the fourth assignment of error. In addition, I feel it is necessary to emphasize a technical error made by the trial court that the majority does not address.

{¶ 24} In the appellants' fourth assignment of error, appellants complain that the trial court allowed judgment against them for a claim of "breach of contract." The trial court has since entered what it has labeled a "Final Judgment Entry (Modified)," correcting the award to a breach of fiduciary duty. The majority has accepted that entry as rendering the fourth assignment of error moot. I disagree.

{¶ 25} Ohio law does not provide for the *modification* of a final appealable order. To modify means "to change in form or character, to alter." American Heritage Dictionary (3d Ed.1996) 1161. Additionally, Civ.R. 60(A) provides for the correction of clerical mistakes, and this task is usually accomplished through what is termed as an entry nunc pro tunc, meaning *"now for then."* Such an entry allows a court to correct clerical mistakes by accurately stating what was actually done, as opposed to what was incorrectly stated in the original entry. Further, it is important to note that a corrective entry nunc pro tunc does not permit the court to *change* any finding, holding, or award that was previously made, but merely to correct a clerical error when something has been misstated or incorrectly designated, as in the case sub judice.

{¶ 26} I am well aware that a trial court's designation of an entry is not controlling and that the content of the entry determines its nature. In this case, the trial court included a footnote that clearly expresses the purpose of the entry as correcting a clerical mistake.[1] However, the term "modification" is clearly

---

1. The trial court entered as a corrective entry a complete restatement of the original entry with the properly corrected language. I would suggest that a better procedure would be for

improper, and it is important to stress the fact that final judgments are just that: final, sacrosanct, and inviolable. Final orders may be appealed, they may be corrected pursuant to Civ.R. 60(A), or relief may be granted under appropriate circumstances as specifically permitted by Civ.R. 60(B). But there is no provision for *modification* of a final entry, and courts should not create a perception that *modification* is permissible outside of these remedies.

{¶ 27} Furthermore, "[d]uring the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court." Civ.R. 60(A). In the case sub judice, leave to correct the entry was neither requested of this court, nor authorized. Therefore, the correcting entry in the trial court was improperly entered and is a nullity.

{¶ 28} It is therefore necessary to consider and rule on appellants' fourth assignment of error. Accordingly, I would sustain the fourth assignment of error and remand the cause to the trial court for further proceedings.

---

the corrective entry (entry nunc pro tunc) to state only what was corrected without unnecessarily repeating the entire entry. Repeating the entire entry requires any interested party to examine the entire corrective entry in order to determine what, if anything, was actually changed and to guarantee that nothing that was originally stated correctly has since been improperly restated.