OPINION
{¶ 1} Defendant-appellant, John M. Ramby, appeals a decision of the Warren County Court of Common Pleas awarding judgment in favor of plaintiff-appellee, Daniel P. Morgan, on claims of contribution, breach of fiduciary duty, and breach of employment agreement. For the reasons outlined below, we affirm in part, reverse in part, and remand. *Page 2 
 {¶ 2} On September 2, 1999, Ramby and Morgan executed a Close Corporation Agreement ("CCA") whereby they formed United Builders, Inc. ("United"). Each acquired 50 percent of the stock in the corporation. In exchange for their respective 50 percent interests, Morgan agreed to initially finance United while Ramby agreed to provide "sweat equity," or, in other words, to run the day-to-day operations of the corporation. The CCA appointed Ramby to the position of president and chief executive officer ("CEO") and Morgan to the positions of treasurer, secretary, and chief financial officer. The CCA also provided that, in lieu of a board of directors, each shareholder would be liable for managerial acts just as a director is liable for actions taken by the full board.
 {¶ 3} Ramby and Morgan executed separate employment agreements with United on September 21, 1999. In accordance with his agreement, Ramby agreed to perform duties and functions determined by United from time to time as customarily assigned to the position of CEO. The agreement also provided that Ramby would devote 50 percent of his working time and efforts to United. In addition, the agreement contained clauses prohibiting Ramby from competing with United or hiring its employees. Finally, the terms of the agreement permitted United to recover actual damages caused by any failure, refusal, or neglect by Ramby to perform his duties under the agreement.
 {¶ 4} The following financial dealings are also relevant to this appeal. Morgan loaned $300,000 in cash to United, as evidenced by a Commercial Mortgage Note ("Note") executed on September 22, 1999. Ramby did not personally guarantee the Note, but signed it in his capacity as president of United. Morgan and Ramby treated the Note as a temporary, short-term revolving line of credit with Morgan advancing money as needed and the balance paid down as monies became available.
 {¶ 5} United obtained two separate National City Bank Visa cards, one of which was personally guaranteed by Ramby and the other by Morgan. Morgan submitted payments *Page 3 
totaling nearly $7,000 towards Ramby's Visa to keep the account current. In January 2004, Morgan negotiated a settlement with National City under which Ramby would pay $0.40 on the dollar. Ramby paid off the Visa in January 2007.
 {¶ 6} Morgan testified that he used his National City Bank Visa to cover expenditures for day-to-day operations of United. The company acquired an additional credit card from MBNA, which Morgan alone personally guaranteed and which he also used for United's day-to-day operations. Morgan satisfied both his Visa account and the MBNA account on his own, with no contribution from Ramby.
 {¶ 7} United also obtained a National City Bank line of credit in the amount of $25,000, which was advanced to the corporate bank account for operations. Both Morgan and Ramby personally guaranteed the line of credit. Morgan insists that he contributed more than his one-half share in order to extinguish the line of credit debt. United also obtained a credit card from Advanta, which Morgan alone personally guaranteed. Morgan used the Advanta card to pay down the National City line of credit by transferring a portion of the debt to the Advanta card to take advantage of its lower interest rate. Morgan paid off the entire balance on the Advanta card.
 {¶ 8} According to Morgan, Ramby separated himself from United by his actions in June 2002 but failed to resign his employment or return his ownership interest in United. Morgan maintains that Ramby refused to manage projects and works in progress, failed to pay vendors and suppliers, failed to aid Morgan in defending lawsuits against United that related to work Ramby was responsible for managing, and interfered in Morgan's attempts to salvage United.
 {¶ 9} On December 19, 2005, Morgan filed a complaint against Ramby alleging causes of action for contribution, breach of employment agreement, breach of fiduciary duty, tortuous interference with business relations, and unjust enrichment. Ramby filed an answer *Page 4 
and counterclaim on March 23, 2006. Ramby filed a motion to dismiss for lack of subject matter jurisdiction on October 30, 2007, which the trial court denied.
 {¶ 10} A bench trial was scheduled for November 5-6, 2007. On the morning of November 5, 2007, Ramby filed a motion for reconsideration of his motion to dismiss. The trial court orally denied the motion. Ramby then orally requested a continuance so that he could petition the appellate court for a writ of prohibition. The trial court denied the continuance. Ramby and his counsel left the courtroom to pursue the writ of prohibition, and the bench trial proceeded without Ramby.
 {¶ 11} The trial court issued its decision on November 28, 2007, finding in favor of Morgan on his claims of breach of employment agreement, breach of fiduciary duty, and contribution. The court awarded Morgan damages in the amount of $523,832.97. This amount included reimbursement for one half of cash advances paid by Morgan to United, plus interest; one half of personally guaranteed credit card debt, plus interest; and legal fees related to litigation involving United as a party.[1] Ramby timely appeals, raising six assignments of error.
 {¶ 12} Assignment of Error No. 1:
 {¶ 13} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-RAMBY BY ENTERING A JUDGMENT HOLDING DEFENDANT-RAMBY, AN INDIVIDUAL SHAREHOLDER, PERSONALLY LIABLE FOR CASH ADVANCES MADE TO THE CORPORATION BY ANOTHER SHAREHOLDER, WITHOUT FACTS OR LAW TO SUPPORT SUCH A HOLDING."
 {¶ 14} Assignment of Error No. 2:
 {¶ 15} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-RAMBY *Page 5 
BY ENTERING A JUDGMENT HOLDING DEFENDANT-RAMBY, AN INDIVIDUAL SHAREHOLDER, PERSONALLY LIABLE FOR CORPORATE CREDIT CARD DEBT THAT WAS PERSONALLY GUARANTEED BY ANOTHER SHAREHOLDER, WITHOUT FACTS OR LAW TO SUPPORT SUCH A HOLDING."
 {¶ 16} Assignment of Error No. 3:
 {¶ 17} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-RAMBY BY ENTERING A JUDGMENT HOLDING DEFENDANT-RAMBY, AN INDIVIDUAL SHAREHOLDER, PERSONALLY LIABLE FOR LEGAL FEES ASSOCIATED WITH THE CORPORATION'S LITIGATION, WITHOUT FACTS OR LAW TO SUPPORT SUCH A HOLDING."
 {¶ 18} Because Ramby's first three assignments of error are interrelated, we shall address them together. Ramby's first assignment of error argues that he cannot be held personally liable for the cash advances made to United by Morgan because he obligated himself to contribute only sweat equity, not capital. According to Ramby, Morgan's cash contributions to the corporation, other than the initial capital investment, were voluntary. Ramby also disclaims any personal liability for the $300,000 loan made to United by Morgan because he signed the Note in his representative capacity as corporate president only, and did not personally guarantee payment on the Note.
 {¶ 19} Ramby's second assignment of error contends that he cannot be held personally liable for one half of the credit card debt incurred by United using credit accounts that were personally guaranteed by Morgan only. He also emphasizes the fact that the sole credit card personally guaranteed by him, the National City Visa, had been fully paid by the time of trial, and maintains that any payments made towards the balance of that card by Morgan were voluntary.
 {¶ 20} Ramby's third assignment of error asserts that he cannot be held personally *Page 6 
liable for the legal fees associated with litigation involving United as a party because these fees are solely United's debts.
 {¶ 21} First, we examine some principles of Ohio corporate law that are relevant to this case. A close corporation, such as United, is a corporation with relatively few shareholders and whose corporate shares are not generally traded on a securities market. Crosby v. Beam (1989),47 Ohio St.3d 105, 107. It is well settled that shareholders in a close corporation owe one another a fiduciary duty to act in good faith. See id. at 107-08. See, also, Herbert v. Porter, 165 Ohio App.3d 217,2006-Ohio-355, ¶ 12. In close corporations possessing both majority and minority shareholders, this fiduciary duty is heightened.Crosby at 108; Herbert at ¶ 12. Because Ramby and Morgan are equal shareholders, however, this heightened standard is not applicable to the present matter. Id. at ¶ 13. Thus, Ramby and Morgan owed one another an ordinary fiduciary duty as shareholders in a close corporation.
 {¶ 22} Further complicating this case is the fact that the fiduciary duty owed between shareholders in a close corporation differs from the fiduciary duty owed by an officer or director of a corporation. Directors owe a fiduciary duty to the corporation and to the shareholders, collectively. Thompson v. Cent. Ohio Cellular, Inc.
(1994), 93 Ohio App.3d 530, 540. This entails a duty of good faith, a duty of loyalty, a duty to refrain from self-dealing, and a duty of disclosure. Wing Leasing, Inc. v. M B Aviation, Inc. (1988),44 Ohio App.3d 178, 181. See, also, R.C. 1701.59(B) and 1701.60(A)(1). A breach of this duty exposes the director to liability for damages where clear and convincing evidence establishes that the director acted with deliberate intent to cause injury to the corporation or recklessly disregarded the corporation's best interests. R.C. 1701.59(D). The trial court's decision found that Ramby violated his fiduciary duty as an officer and director of United, and the court's decision employed a clear and convincing evidence standard.
 {¶ 23} Of note is the fact that the present matter is a direct action brought by Morgan *Page 7 
in his individual capacity, not a derivative action brought by Morgan on behalf of United. Consequently, it does not appear that Morgan may recover directly for any breach of fiduciary duty committed by Ramby in his capacities as officer and director. Generally, a director's breach of fiduciary duty is said to harm the corporation and, accordingly, damages resulting from such a breach inure to the corporation. GrandCouncil of Ohio v. Owens (1993), 86 Ohio App.3d 215, 220-21. See, also,Adair v. Wozniak (1986), 23 Ohio St.3d 174, 177-78. The exception to this general rule is that a shareholder may bring an action for an injury suffered by the corporation where (1) there is a special duty, such as contractual, between the wrongdoer and the shareholder, or (2) the shareholder suffered an injury separate and distinct from that suffered by other shareholders. Hershman's, Inc. v. Sachs-DolmarDiv. (1993), 89 Ohio App.3d 74, 77.
 {¶ 24} At trial, the trial court should have limited Morgan's recovery to any breach of fiduciary duty owed directly by Ramby to Morgan, unless the court finds legal and factual support upon which to otherwise premise personal liability under the facts and circumstances of this case. See Adair at 176 (observing that a shareholder may recover for injuries sustained by, or wrongs done to, the corporation "where the wrongful acts are not only against the corporation but are also violations of a duty arising from contract or otherwise owed directly by the wrongdoer to the shareholder"); Hershman's at 77.
 {¶ 25} Similarly, Morgan may only recover for breach of contract where he was a party to or an intended third-party beneficiary of the contracts upon which Ramby's breaches are premised. Kappes v. Village ofMoscow (May 4, 1998), Clermont App. No. CA97-09-078, at 4-5. Both Morgan and Ramby were parties to the CCA, therefore Morgan may recover where there is evidence that Ramby breached the CCA. However, Morgan was neither a party to nor a named third-party beneficiary of Ramby's employment agreement with United. Therefore, Morgan may not directly recover for any breaches of Ramby's employment *Page 8 
agreement unless the trial court is able to decipher legal and factual support upon which to premise personal liability under the facts and circumstances of this case.
 {¶ 26} Morgan presented evidence at trial regarding Ramby's poor job performance. It is not clearly discernable from the record or the trial court's decision, however, which fiduciary and contractual duties the court relied upon in rendering judgment in favor of Morgan. Ramby correctly points out in his appellate brief that Morgan interchangeably discusses the duties owed by Ramby to United with those owed by Ramby to Morgan, without making any distinction between them. See, e.g.,Aschinger v. Columbus Showcase Co. (C.A.6, 1991), 934 F.2d 1402, 1407. The difficulty lies in the fact that Ramby acted in a number of different roles for United including employee, shareholder, officer, and director. Morgan, the sole plaintiff in this action, may only recover for breaches of fiduciary and contractual duty which Ramby owed directly to him. This will require the trial court to properly develop the record by forging legal and factual bases between the duties owed by Ramby directly to Morgan and the relevant breaches of duty committed by Ramby, if any.
 {¶ 27} It is also unclear which of Ramby's breaches of duty the trial court relied upon in calculating the damages award. "It is well established that principles of compensation provide the measure and limit for damage recoveries." Spalding v. Coulson (Sept. 3, 1998), Cuyahoga App. Nos. 70524, 70538, 1998 WL 564054, at *9. Do these principles of compensation compel the conclusion that Ramby's breaches of contract and fiduciary duty permit reimbursement for half of Morgan's cash advances, credit debt, and legal fees? The record, as it stands, provides only a vague nexus between Ramby's alleged breaches and the damages awarded. "In general, the damages that may be recovered in a civil action are * * * such only as are the natural and probable consequences of a tortious act or breach of contract on the part of the defendant * * *." 30 Ohio Jurisprudence 3d (1999) 21, Damages, Section 14. The trial court thus must properly develop the record by establishing adequate *Page 9 
legal and factual bases between Ramby's breaches of fiduciary duty and contract, if any, and the damages naturally and probably resulting from these breaches, if any.
 {¶ 28} Ramby's first, second, and third assignments of error are sustained.
 {¶ 29} Assignment of Error No. 4:
 {¶ 30} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-RAMBY BY ENTERING A JUDGMENT IN A CASE IN WHICH THE TRIAL COURT LACKED SUBJECT MATTER JURISDICTION."
 {¶ 31} Ramby urges this court to vacate the judgment of the trial court on the basis that the trial court lacked subject matter jurisdiction over the matter. In support, Ramby cites section 11.04 in his employment agreement, which states: "Employee consents to personal jurisdiction in the courts of Ohio and hereby agrees that the Montgomery County, Ohio, Court of Common Pleas shall be the exclusive forum for the resolution of disputes arising under or relating to this Agreement." Ramby insists that this provision vests subject matter jurisdiction exclusively in the Montgomery County Court of Common Pleas.
 {¶ 32} Subject matter jurisdiction refers to a court's power to adjudicate a case upon its merits. Pratts v. Hurley, 102 Ohio St.3d 81,2004-Ohio-1980, ¶ 11. The issue of subject matter jurisdiction may be challenged at any point during a case. Id. Conversely, the failure to timely raise a challenge to venue results in a waiver of that issue.Durrah v. Durrah, Butler App. No. CA2005-06-144, 2006-Ohio-2138, ¶ 12; Civ. R. 12(H). Venue refers to the geographic locality in which an action should be heard. Morrison v. Steiner (1972), 32 Ohio St.2d 86, 87. Improper venue does not deprive a court of its jurisdiction to hear an action. State ex rel. Florence v. Zitter, 106 Ohio St.3d 87,2005-Ohio-3804, ¶ 23.
 {¶ 33} Ramby attempts to salvage his untimely objection by wording it in terms of subject matter jurisdiction rather than venue. The plain language of the forum selection clause in section 11.04 of Ramby's employment agreement clearly describes the geographic *Page 10 
locality where disputes pertaining to the employment agreement should be heard. Cf. Stocklas v. Erie Ins. Grp. (Oct. 10, 1997), Lake App. No. 96-L-186, 1997 WL 665980, at *2. This provision thus establishes the proper venue, not subject matter jurisdiction. Because Ramby failed to timely challenge venue in a pre-pleading motion or in his answer, the issue was waived. Durrah at ¶ 12.
 {¶ 34} Ramby's fourth assignment of error is overruled.
 {¶ 35} Assignment of Error No. 5:
 {¶ 36} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-RAMBY BY DENYING DEFENDANT-RAMBY'S MOTION FOR A CONTINUANCE OF TRIAL."
 {¶ 37} Assignment of Error No. 6:
 {¶ 38} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-RAMBY BY ENTERING A JUDGMENT WITHOUT DEFENDANT-RAMBY'S PARTICIPATION IN A TRIAL ON THE MERITS."
 {¶ 39} In his fifth assignment of error, Ramby insists that the trial court abused its discretion in denying his motion for a continuance on the morning of trial. In his sixth assignment of error, Ramby claims that the trial court's denial of his continuance essentially deprived him of his right to participate in the trial on the merits. Due to the fact that we are remanding for a new trial, Ramby's fifth and sixth assignments of error have been rendered moot by our disposition of his first, second, and third assignments of error. See App. R. 12(A)(1)(c).
 {¶ 40} The portion of the trial court's decision denying Ramby's counterclaim is affirmed, as that issue was not appealed. The portion of the trial court's decision awarding judgment in favor of Morgan is reversed, and the matter is remanded for a new trial on the merits. *Page 11 
 {¶ 41} Judgment affirmed in part, reversed in part, and remanded.
BRESSLER, J., concurs.
WALSH, P.J., dissents without written opinion.
[1] This portion of the award did not include legal fees for Morgan's current lawsuit against Ramby. *Page 1