[Cite as *Nielsen v. Conway*, 2013-Ohio-5046.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

KENNETH A. NIELSEN, TRUSTEE

      Plaintiff-Appellee

v.

RICHARD B. CONWAY, et al.

      Defendant-Appellant


Appellate Case No.    25605

Trial Court Case No.   2011-CV-3660

(Civil Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of November, 2013.

. . . . . . . . . . .

RICHARD L. CARR, JR., Atty. Reg. No. 0003180, 110 North Main Street, Suite 1000, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

W. MICHAEL CONWAY, Atty. Reg. No. 0023247, 3080 Ackerman Boulevard, Suite 330, Kettering, Ohio 45429
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Defendant-Appellant, Richard B. Conway, appeals from a trial court decision partially overruling his objections based on a misapplication of res judicata.    Conway also contends that the trial court erred in admitting evidence statements by the plaintiff that were hearsay.    Finally, Conway states that the trial court erred in its ruling that the Defendants violated R.C. 1701.76 and fiduciary duties.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

{¶ 2}    Appellee, Kenneth A. Nielsen's Grandmother, Janette W. Stetson, was a life partner with Appellant, Richard B. Conway. Stetson and Conway were realtors in Florida and jointly owned a condo at Ft. Myers Beach.   In 1988, they formed Carlos Pointe Inc.   ("CPI"), wherein the condo was the only asset.   Each owned 250 shares of 500 total.

{¶ 3}    Stetson conveyed her interest to the Janette W. Stetson Trust ("Trust"). After Stetson died in September 2008, Nielsen controlled half the shares as the successor Trustee.

{¶ 4}    In March 2010, the Board of Directors of CPI held a meeting. Conway appointed his daughter, Kimberly ("Kimberly"), as Director and Treasurer.

{¶ 5}    In February 2011, CPI and Conway listed the condo for sale with Coldwell Banker without Nielsen's knowledge. The agreement provided that Conway would receive 25% of the 6% commission as a referral. Conway received Kimberly's verbal approval, but it was not in writing. There was no official shareholder approval.

{¶ 6}    The April 19, 2011 shareholder meeting included Conway and Nielsen in person. Kimberly participated by phone.   Conway announced that he had transferred five shares

of stock to Kimberly. She took action as a shareholder by making a motion approving the minutes. Tr. 163. A third director was not appointed as required by law.

{¶ 7} On May 4, 2011, Conway, as President of CPI, signed a contract for the sale of the condo for $355,000. At the closing on May 25, 2011, Conway received a $21,300.00 commission and Coldwell Banker and Lahanina Realty received a total of $21,595.00. Conway also received $152,600.66 for his shares and $21,248.74 for undocumented expenses as shareholder which had not been paid by the Trust nor submitted to Nielsen. The transaction was unknown to Nielsen but approved orally by Conway and Kimberly. The approval was not documented in writing. At the time of trial, $87,300 was left in CPI's account.

{¶ 8} Nielsen filed this action seeking dissolution of the corporation. On June 16, 2011, Conway filed his answer. On June 21, 2011, Nielsen first learned from an Internet search that the condo had been sold.

{¶ 9} There were three actions between Nielsen and Conway. Nielsen was plaintiff in all three. The first one, involving Stetson's estate, was dismissed.

{¶ 10} The second action pertained to this case regarding application of res judicata. In the second action, Nielsen alleged fraud, conversion, breach of fiduciary duty, etc. Conway counterclaimed that he had entered into a stock purchase agreement funded by cross-life insurance policies. Judge Price denied all claims asserted by both sides.

{¶ 11} In this third action, Nielsen sought dissolution of the corporation, that the condo be sold, and the net proceeds equally divided. Conway did not oppose the dissolution. However, Conway again counterclaimed, asserting that he was entitled to purchase the condo for $50,000 under the terms of a stock purchase agreement. He alleged the agreement also included

provisions for splitting of condo expenses.

{¶ 12} The matter was tried before a magistrate. The issue arose whether CPI needed three directors for having three shareholders. Conway's testimony concerning whether he had transferred stock to Kimberly was contradictory. At first, he said that Kimberly had not been a stockholder since the last trial, on August 31, 2010 and she participated in the shareholders' meeting as treasurer and director. Tr., p. 148. Then he admitted telling Nielsen at the shareholders' meeting that he had assigned "the stock" to Kimberly. Tr., p. 148. Then, Conway denied telling Nielsen that he had transferred the stock to Kimberly in 2011. Tr., p. 148. After Conway was impeached with a video tape of the shareholders' meeting, Conway admitted that he stated at the shareholders' meeting that Kimberly "got her stock in 2011." Tr., p. 163. The Magistrate noted that Conway's testimony regarding Kimberly's ownership of the stock was contradictory, and that he recanted after seeing the video. Tr., p. 172.

{¶ 13} The trial court found that Conway and CPI sold the condo and retained proceeds without informing Nielsen and in violation of corporation law. The sale was orally authorized by a board consisting of only two directors. Three CPI shareholders required a board of not less than three directors. Also, the condo sale had not been authorized at a shareholders' meeting by an affirmative vote of at least two thirds of the shares held by the stockholders.

{¶ 14} The trial court also found that Conway converted money to his own use in violation of corporate law and in violation of a fiduciary duty. Conway failed to inform Nielsen that CPI listed the condo for sale, that the condo was sold, that a closing was held, that CPI signed a deed to the purchaser, and that Conway took an unauthorized commission and expenses.

{¶ 15} The magistrate and trial court ruled against Conway's counterclaim, finding that,

"Conway failed to present any testimony or evidence as to his counterclaim." They also found that Conway "failed to prove his case by a preponderance of the evidence." Further, Conway stated in his objections that " *** Defendants do not oppose dissolution of the corporation *** ." Conway Objections, filed Jan. 11, 2013, p. 8.

{¶ 16} The trial judge adopted all of the Magistrates's findings except one. The Magistrate awarded Nielsen $161,846.85, representing half of the sale proceeds less appropriate deductions as damages for breach of fiduciary duty. However, the trial court granted Conway's objection, in part, concerning the agreement for sharing of expenses from the time of the judgment in the second action. It held a hearing to determine expenses. As a result, the court issued a judgment granting a credit in Conway's favor in the amount of $12,441.61 for corporate expenses he paid, and against Conway in the amount of $155,626.04, representing Nielsen's net share of the proceeds of the corporation. It ruled that Conway's counterclaim was barred by res judicata because his entitlement to purchase the condo for $50,000 under the agreement was previously litigated and resolved against Conway in the second action. However, the court sustained Conway's objection to the Magistrate's decision, in part, and ordered that some additional expenses be divided equally from the time of the judgment in the second action to be deducted from the sale proceeds. Nielsen had no objection to this ruling.

## II. LEGAL ANALYSIS

### A. FIRST ASSIGNMENT OF ERROR

{¶ 17} Conway's first assignment of error states:

THE TRIAL COURT ERRED IN ITS OCTOBER 9, 2012 DECISION

AND ORDER ON DEFENDANT'S OBJECTIONS TO MAGISTRATE'S DECISION PARTIALLY OVERRULING DEFENDANT'S OBJECTION B, OBJECTIONS TO THE MAGISTRATE'S DECISION, BASED ON A MISAPPLICATION OF RES JUDICATA.

## Does Res Judicata Apply to Conway's Counterclaim?

**{¶ 18}** Nielsen prevails on this issue. The trial court properly concluded that Conway's claims of a right to purchase Nielsen's stock for $50,000 and claim for equal division of corporate expenses through August 31, 2010, were barred by res judicata. "Simply stated, 'res judicata precludes a party from relitigating issues already decided by a court or raising matters that the party should have brought in a prior action.'" *SunTrust Bank v. Wagshul*, 2d Dist. Montgomery No. 25567, 2013-Ohio-3931, ¶ 8, quoting *Am. Tax Funding, L.L.C. v. Whitlow*, 2d Dist. Montgomery No. 24559, 2012-Ohio-3839, ¶ 9.

**{¶ 19}** Res judicata applies in this case, because the claims between the same parties are identical, and they were specifically resolved against Conway in the second litigation. In the prior case, Conway's counterclaim alleged that one half of the stock of the corporation would be purchased by the survivor for $50,000. *See* Answer of Defendants Richard B. Conway, Kimberly Conway and Carlos Pointe, Inc. to Second Amended Verified Complaint and Counterclaim, ¶ 32, filed in Montgomery County C.P. Case No. 2009 CV 09385. It later alleged that Conway had a duty to contribute equally to support the corporation. *Id*. at ¶ 30 and 40. The trial court ruled in favor of Nielsen and against Conway on these issues in the second case, thereby resolving the issue.

**{¶ 20}** In the third case, the trial court granted Conway's objection to the Magistrate's

Decision, in part, finding that the only part of the counterclaim that was not barred by res judicata was the portion of the expense splitting provision that applied to the time period subsequent to the judgment in the second case. Nielsen did not cross appeal on this issue.

**{¶ 21}** Conway admitted at trial that the counterclaims in both cases were the same. Tr., pp. 146 - 148. The trial court did not abuse its discretion when it found that allegations in Conway's counterclaim in this case were the same as those resolved against him in the previous case.

**{¶ 22}** We overrule Conway's first assignment of error.

## B. SECOND ASSIGNMENT OF ERROR

**{¶ 23}** Conway's second assignment of error states:

THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE STATEMENTS BY THE PLAINTIFF THAT WERE CLEARLY HEARSAY, AS SET FORTH IN OBJECTION C, OBJECTIONS TO MAGISTRATE'S DECISION.

**Did the Trial Court Err in Admitting Hearsay Statements of Decedent Stetson?**

**{¶ 24}** The evidentiary issue regarding the Evid.R. 804(B)(5)(a) executor-trustee hearsay exception is moot. The testimony in controversy was Nielsen's testimony repeating what decedent Stetson had stated. It was offered to rebut Conway's testimony in support of his counterclaim. We have found that res judicata applies, preventing re-litigation of this claim. Conway was not prejudiced by the testimony.

**{¶ 25}** Therefore, we overrule the second assignment of error.

## C. THIRD ASSIGNMENT OF ERROR

**{¶ 26}** Conway states his third assignment of error as:

THE TRIAL COURT ERRED IN ITS RULING THAT THE DEFENDANTS VIOLATED R.C. 1701.76 AND FIDUCIARY DUTIES.

**WAS CONWAY SUFFICIENTLY CULPABLE TO SUPPORT THE TRIAL COURT FINDINGS?**

**{¶ 27}** The trial court did not abuse its discretion by finding that Conway violated R.C. 1701.76 and his fiduciary duty to Nielsen. However, Conway was not financially prejudiced by this finding.

**{¶ 28}** As President and Director of CPI, Conway owed Nielsen, as a shareholder, a duty of good faith, loyalty, to refrain from self-dealing and of disclosure. *Wing Leasing, Inc. v. M & B Aviation, Inc*., 44 Ohio App. 3d 178, 181-182, 542 N.E.2d (10th Dist.1988); *Crosby v. Beam*, 47 Ohio St. 3d 105, 108, 548 N.E.2d 217 (1989). The trial court found that Conway converted money to his own use in violation of corporate law and in violation of a fiduciary duty based upon the following findings.

**{¶ 29}** Conway failed to inform Nielsen that CPI listed the condo for sale, the condo was sold, a closing was held, and CPI signed a deed to the purchaser. Conway took an unauthorized commission and expenses without Nielsen's knowledge. The listing contract for the sale of the condo, orally approved by Conway and his daughter, provided that Conway would receive 25% of the broker's 6% commission to be paid by the brokers. However, commissions were paid from sale proceeds to Coldwell Banker and Lahaina Realty in the amount of $21,595.00. Conway was also paid an additional 6% commission of $21,300.00 from the

proceeds of the sale. In addition, Conway failed to disclose that at the closing, he was paid $21,248.74 for undocumented corporate expenses, which were not submitted to nor paid by the Trust or CPI, and $152,600.66 as his share of the sale proceeds as a 50% shareholder.

{¶ 30} Nielsen discovered the sale of the condo from an Internet search subsequent to the date Conway filed his Answer in this case. Nielsen had not received any money from the sale of the condo.

{¶ 31} The court also found that Conway and CPI sold the condo and retained proceeds in violation of corporation law. Conway alleged that the sale was orally authorized, with no written evidence or minutes, by a board consisting of only two directors, Conway and his daughter, Kimberly. However, the Magistrate found, and the trial court adopted, the finding that there was no proper approval by the board of directors in violation of R.C. 1701.76.

{¶ 32} The trial court also found that Conway transferred CPI shares to Kimberly by at least April, 19, 2011. Therefore, the corporation had three shareholders. With three shareholders, CPI was required to operate with three directors in May 2011, when only two approved the sale and closing. R.C.1701.56(A)(1). [1]

{¶ 33} The condo sale had not been authorized by an affirmative vote of at least two-thirds of the shares held by the stockholders. This is required when all or substantially all of the corporation's assets are sold not in the ordinary course of business. R.C. 1701.76(A)(1)(b). Finally, Conway listed and sold the condo without informing Nielsen.

{¶ 34} The trial court did not abuse its discretion by finding that Conway violated

---

[1] Although the statute has been subsequently amended, at the time of the transfer, and at the time of the magistrate's decision, R.C. 1701.56(A)(1) required three directors.

corporate law, breached a fiduciary duty, and improperly converted corporate funds to his own use.

### Did Nielsen Ratify Conway's Actions at trial?

{¶ 35}    Conway contends that Nielsen ratified the listing and sale. He relies on R.C. 1701.76(A)(1)(a), which provides that authorization of all or substantially all of the corporate assets may be authorized "By the directors, either before or after authorization by the shareholders as required by this section; and (b) at a meeting of the shareholders held for such purpose * * *."

{¶ 36}    Nielsen testified that he would have approved the sale of the condo had he been given the opportunity to do so. Tr., p. 217. Conway contended that this ratified Conway's actions and negated the trial court's findings concerning his culpability. However, Nielsen was prejudiced by Conway's unlawful actions. For example, at the closing, Conway took half the proceeds as shareholder, plus improper commissions and expenses resulting in an unlawful depletion of corporate assets. Tr., p. 218. At the time of trial, there was only about $87,000 remaining in the corporate account. Tr., p. 68.

{¶ 37}    Under these circumstances, Nielsen's testimony was not a proper substitute for the required notices and affirmative vote given at a meeting of the shareholders for such purposes as required by R.C. 1701.76(A)(1)(a). The trial court did not abuse its discretion under the circumstances of this case when it failed to find ratification sufficient to negate Conway's breach of fiduciary duty, violation of corporate law, and conversion.

### Was Conway Prejudiced by the Trial Court's findings?

{¶ 38}    Conway was not materially prejudiced by the trial court findings that he

converted money from Nielsen when he breached a fiduciary duty and violated corporate law. During the course of this action there was sufficient evidence to support a dissolution of the corporation. Conway did not object to a dissolution of the corporation. Also, Nielsen did not object to the sale of the condo. Upon a dissolution of the corporation, and sale of the condo, Nielsen's share of the net proceeds of corporate assets would have been 50%, since he owned half of the shares. R.C. 1701.91. Therefore, Nielsen's share would have been the same whether or not the trial court found that Conway breached a fiduciary duty and violated corporate law. Consequently, even if the trial court erred, Conway was not prejudiced by these findings.

{¶ 39} We overrule Conway's third assignment of error.

{¶ 40} All of the assignments of error having been overruled, we affirm the trial court.

. . . . . . . . . . . . .

FROELICH and HALL, JJ., concur.

Copies mailed to:

Richard L. Carr, Jr.
W. Michael Conway
Hon. Michael W. Krumholtz