[Cite as *Bracha Found. v. Warren Steel Holdings, L.L.C.*, 2017-Ohio-7557.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| BRACHA FOUNDATION, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | **CASE NO. 2015-T-0121** |
| WARREN STEEL HOLDINGS, LLC. et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2015 CV 01117.

JUDGMENT: Affirmed.

*Michael R. Szolosi, Jr.*, Michael R. Szolosi, Jr., LLC, 2695 Andover Road, Upper Arlington, OH 43221-3203; and *James H. Power* and *Sean P. Barry*, Holland & Knight LLP, 31 West 52nd Street, New York, NY 10019 (For Plaintiffs-Appellants).

*Patrick K. Wilson* and *Matthew M. Ries*, Harrington, Hoppe & Mitchell, Ltd., 108 Main Street, S.W., Suite 500, Warren, OH 44481 (For Defendants-Appellees, Warren Steel Holdings, LLC and Mordechai Korf).

*Richard M. Bain*, *Jeffrey C. Toole*, and *Heidi J. Milicic*, Buckley King, L.P.A., 1400 Fifth Third Center, 600 Superior Avenue, East, Cleveland, OH 44114-2652; and *Bruce S. Marks* and *Thomas C.* Sullivan, Marks & Sokolov, LLC, 1835 Market Street, 28th Floor, Philadelphia, PA 19103 (For Defendants-Appellees, Halliwel Assets, Inc. and Panikos Symeou).

THOMAS R. WRIGHT, J.

{¶1} Appellants, Vadim Shulman, Bracha Foundation, and Hornbeam Corp., appeal the dismissal of all six claims in their two complaints for various reasons under

Civ.R. 12(B). They primarily contend that the trial court erred in holding that they lacked standing to bring the underlying civil actions and that their claims cannot be maintained in the state of Ohio under the internal affairs doctrines. Pursuant to the following legal analysis, the dismissal determination is affirmed.

{¶2} Vadim Shulman is a citizen of Ukraine who resides in Monaco. He is the sole beneficiary of Bracha Foundation, a Lichtenstein trust. He is also the sole owner of Hornbeam, a Panamanian corporation.

{¶3} Appellees are Warren Steel Holdings, LLC, Halliwel Assets, Inc., Panikos Symeou, and Mordechai Korf. Warren Steel Holdings is a Delaware corporation which owns a steel plant/factory in Warren, Trumbull County, Ohio. Halliwel is a British Virgin Islands ("BVI") corporation which is presently the sole owner of Warren Steel Holdings. Symeou is a Cypriot attorney who is the sole director of Halliwel. Korf, a resident of the state of Florida, is the president of Warren Steel Holdings.

{¶4} In 2001, Shulman bought the Warren steel factory for approximately 28.5 million dollars. At the time of the purchase, the factory was not operational. However, Shulman took steps to reopen the factory and produce steel, including the formation of Warren Steel Holdings. At some point, Warren Steel Holdings became the sole owner of the steel factory.

{¶5} By 2006, Shulman decided that additional capital was needed to make the factory a profitable operation. As a result, he entered into a joint venture with two fellow Ukrainian citizens, Igor Kolomoisky and Genady Bogolubov. The three men agreed that each of them would invest 30 million dollars apiece in the factory. Thus, Shulman's total investment was 58.5 million dollars. According to Shulman, the three men also agreed

2

that he would ultimately be compensated for his initial investment in the factory.

{¶6}   As part of this transaction, Halliwel Assets was formed under the laws of the British Virgin Islands.  In April 2008, ownership of the steel factory was transferred from Warren Steel Holdings to Halliwel.   At the outset of its existence, Halliwel had only three registered shareholders: Panikos Symeou, Marigold Trust, and Hornbeam Corp. Each owned a one-third interest in Halliwel.  In addition to being installed as the sole director of that company, Symeou acted as trustee for Kolomoisky's interest.  Marigold Trust represented Bogolubov's interest.  Shulman was Hornbeam's sole owner.

{¶7}   Through the ensuing years, Kolomoisky, Bogolubov, and Korf, as president of Warren Steel Holdings, formed a number of other companies which subsequently did business with Warren Steel.  One of the separate entities was a steel company located in Kentucky, of which Korf was also president.  In these transactions, the separate entity would either loan money to Warren Steel or purchase its products. The terms of these deals always favored the separate companies owned by Kolomoisky, Bogolubov, and Korf.  Consequently, Warren Steel operated in the "red" every year and its overall value began to decrease.

{¶8}   In 2012, Shulman began to investigate the separate companies and their transactions with Warren Steel.  Ultimately, he concluded that Kolomoisky, Bogolubov, and Korf were using the loans as a way to obtain a secured interest in Warren Steel's assets, so that they could subsequently take control of Warren Steel and deny him the means of recouping his substantial investment.

{¶9}   In August 2014, Hornbeam and Shulman received notice from Halliwel of an emergency general meeting Halliwel would be conducting on August 8, 2014.  The

3

purpose of the meeting was to consider a proposed restructuring agreement and a 25 million dollar loan to Warren Steel from Optima Acquisitions LLC, one of the separate entities owned by Kolomoisky, Bogolubov, and Korf. Initially, Symeou, as the sole director of Halliwel, agreed to postpone the meeting and provide addition information to Shulman regarding Warren Steel's financial status. However, unbeknownst to Shulman, Symeou held the meeting as scheduled and approved the loan and restructuring agreement.

**{¶10}** On August 29, 2014, Hornbeam, the registered shareholder for Shulman, filed an application before a BVI court to enjoin Halliwel from conducting the emergency shareholders meeting. As part of its application, Hornbeam also requested that Halliwel be liquidated. Approximately forty days later, the BVI court held an oral hearing on the matter, at the outset of which it was revealed that the vote on the loan and restructuring agreement had already been held. Hence, Hornbeam withdrew its injunction request. In addition, the BVI court denied the liquidation application, concluding that Hornbeam was trying to use the proceeding as a means of stopping the majority of shareholders from exercising control over Halliwel's affairs. Based upon this, the BVI court ordered Hornbeam to pay $846,526 in costs and attorney fees. Hornbeam cannot proceed with any new action before the BVI court before this amount is paid.

**{¶11}** In December 2014, Shulman took steps to transfer his one-third interest in Halliwel from Hornbeam to Bracha Foundation. Since this transaction has never been noted in Halliwel's corporate books, though, Hornbeam is still the registered shareholder of Shulman's interest.

**{¶12}** After the completion of the BVI proceeding, Hornbeam brought four cases

4

in federal district courts for discovery under 28 U.S.C. Sec. 1782. The cases were filed in Ohio, New York, Delaware, and Florida. The purpose of the cases was to locate new information concerning the separate companies owned by Kolomoisky, Bogolubov, and Koft, and the transactions between those companies and Warren Steel.

{¶13} In June 2015, Shulman and Bracha Foundation filed their first complaint in the Trumbull County Court of Common Pleas against Warren Steel Holdings, Halliwel, Symeou, and Koft. Although Kolomoisky and Bogolubov were named as defendants in the complaint, they were never served. In seeking recovery of the funds Shulman lost as a consequence of the separate companies' alleged acts, the complaint stated claims sounding in fraud, conversion, and unjust enrichment. The complaint also had claims seeking injunctive relief, appointment of a receiver, and inspection of corporate books.

{¶14} In conjunction with its initial complaint, Shulman and Bracha Foundation moved the trial court for a temporary restraining order. After conducting an ex parte hearing, the trial court granted the motion in part, enjoining the defendants from selling Warren Steel Holdings or any of its assets to the separate companies owned by Koft, Kolomoisky, and Bogolubov. The court further ordered the defendants to avoid a credit bid of any loan made by any of the separate companies.

{¶15} Upon the completion of service, three of the four defendants, Warren Steel Holdings, Halliwel, and Symeou, immediately moved to vacate the TRO on the grounds that Shulman and Bracha Foundation lacked standing to maintain the case. The motion was referred to a magistrate for review. After holding a hearing, the magistrate issued a decision recommending that the motion to vacate be granted and the action dismissed in its entirety. The magistrate found that Shulman and Bracha Foundation did not have

5

the requisite standing because any dispute regarding who or what entity was the proper shareholder of the Halliwel interest had to be determined by a BVI court.

{¶16} In addition to objecting to the magistrate's decision, Shulman and Bracha Foundation filed an amended complaint, seeking to add Hornbeam as a third plaintiff in the action. The basic allegations of the complaint and the nature of the six claims were not altered. Hornbeam then instituted a separate action before the trial court, asserting the identical six claims based upon the identical allegations. The trial court immediately consolidated the two cases for all purposes.

{¶17} Before the trial court could proceed on the objections to the magistrate's decision, all four defendants/appellees, Warren Steel Holdings, Halliwel, Symeou, and Koft, moved to dismiss the complaints under both cases. Besides the issue of standing, they contended that Shulman, Bracha Foundation, and Hornbeam, appellants, could not assert their claims in Ohio under the internal affairs doctrine; that appellants had failed to satisfy BVI law in instituting the actions; and that Ohio was not a convenient forum for litigating the actions. In essence, appellees argued that appellants could only maintain their claims against them in a BVI court.

{¶18} After appellants had been given the opportunity to respond to all pending motions, the trial court issued its final judgment dismissing all six claims for relief in both complaints. In addition to upholding the magistrate's analysis regarding Shulman's and Bracha Foundation's standing, the court further held that Hornbeam lacked standing to bring the case because it did not have a license to transact business in Ohio. The court also accepted appellees' arguments as to the application of the internal affairs doctrine and whether Ohio was the most convenient forum.

6

{¶19} In appealing the dismissal of the complaints in both cases, appellants set forth five assignments for review:

{¶20} "[1.] The trial court erred in holding that Plaintiffs lack standing.

{¶21} "[2.] The trial court erred in dismissing these actions pursuant to the internal affairs doctrine.

{¶22} "[3.] The trial court erred in concluding that Plaintiffs' claims are derivative under Ohio law, and therefore required a verified Complaint.

{¶23} "[4.] The trial court erred in dismissing these actions on grounds of *forum non conveniens*.

{¶24} "[5.] To the extent the trial court summarily incorporated the Defendants' alternative arguments for dismissal, it erred."

{¶25} Under their first assignment, appellants contend that the trial court erred in not concluding that at least one of them had standing to maintain the underlying case against appellees. As noted above, in relation to Shulman and Bracha Foundation, the trial court held that they lacked standing because they were not registered shareholders of Halliwel. As to Hornbeam, the court found that it could not bring the case because it was not licensed to transact business in Ohio. For the following reasons, it is necessary to only address the merits of the trial court's analysis regarding Hornbeam.

{¶26} R.C. 1703.03 provides that unless a statutory exception applies, a foreign corporation cannot "transact business" in Ohio unless it is the present holder of a valid license to do so, as issued by the secretary of state. As to the effect of not having such a license, R.C. 1703.29(A) states, in pertinent part:

{¶27} "The failure of any corporation to obtain a license * * * does not affect the

7

validity of any contract with such corporation, but no foreign corporation which should have obtained such license shall maintain any action in any court until it has obtained such license."

{¶28} Under this provision, if a foreign corporation is transacting business in our state, it cannot file a legal action in an Ohio court unless it has a valid license to engage in that business. However, if a foreign corporation is not transacting business within our borders, the lack of a license does not preclude it from maintaining a legal action in a state court. *Bosl v. First Fin. Inv. Fund I*, 8th Dist. Cuyahoga No. 95464, 2011-Ohio-1938, ¶15-16.

{¶29} In applying R.C. 1702.29(A), the trial court held that Hornbeam could not bring the underlying case because it had been transacting business in Ohio without a valid license from the secretary of state. This holding was predicated upon the following logic:

{¶30} "However, Plaintiff Hornbeam claims that it is not transacting business in Ohio. It would be inapposite to sustain Plaintiff's contention that the Defendants, especially Defendant Halliwel, are transacting business in the State of Ohio while simultaneously accepting Plaintiffs' contention that Hornbeam is not transacting business in Ohio."

{¶31} Given the allegations in appellants' complaints, the trial court's analysis of this issue is flawed. There is no dispute that Halliwel is the sole owner of Warren Steel Holdings, which in turn is the sole owner of the steel factory in Warren, Ohio. Since the operation of a steel factory within the state constitutes a business, Halliwel is obviously transacting business within the state. On the other hand, Hornbeam's sole function is to

8

act as the shareholder of Shulman's interest in Halliwel. As that limited function has no connection to the state of Ohio, appellants' allegations only support the conclusion that Hornbeam does not transact business in Ohio.

{¶32} Given this conclusion, Hornbeam could maintain a legal action in an Ohio court notwithstanding the fact that it did not have a valid license to transact business in this state. Moreover, since Hornbeam could maintain the underlying action on its own, the trial court erred in concluding that the case could be dismissed in its entirety solely on the grounds of standing. To this extent, appellants' first assignment has merit. But, any error the trial court made as to the issue of standing is not prejudicial because there was another valid basis for the decision to dismiss.

{¶33} Under their second assignment, appellants assert the trial court erred in concluding that they could not proceed on their two complaints because their claims were barred under BVI law. In this aspect of its analysis, the court first held that, since Halliwel was incorporated under BVI law, the internal affairs doctrine mandated that BVI law be followed in determining the viability of the claims. Based upon this, the trial court further concluded that, regardless of whether appellants' claim of fraud, conversion, and unjust enrichment were considered "derivative" or "direct" in nature, they did not comply with certain statutory requirements for maintaining those claims.

{¶34} Appellants challenge the trial court's "internal affairs" analysis. First, they submit that the doctrine has no applications in this case because their claims are based upon conduct that occurred in Ohio. Second, appellants argue that Ohio law should be followed because our state has a stronger "interest" in the outcome of the case than the British Virgin Islands.

9

{¶35} "The doctrine of internal affairs is a conflict of laws principle which recognizes the policy that a state should have authority to regulate the internal affairs of its own corporations. *State ex rel. Petro v. Gold*, 166 Ohio App.3d 371, 2006-Ohio-943, 850 N.E.2d 1218, ¶47 (10th Dist.). As a matter of comity and a need for uniformity of decisions, the courts of one state may not ordinarily interfere with the prerogative of the state in which a corporation is created or domiciled to govern the internal operation of that entity. *Relief Assn. of the Union Works v. Equitable Life Assur. Soc.*, 140 Ohio St. 68, 42 N.E.2d 653 (1942), paragraph one of the syllabus; 2 Restatement of the Law 2d, Conflict of Laws, Section 302, Comment b (1971).

{¶36} "Ordinarily, the law of the state of incorporation determines issues relating to the internal affairs of the corporation. *State ex rel. Petro* at ¶47, citing *First Natl. City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 621, 103 S.Ct. 2591, 77 L.Ed. 46 (1983). Those matters encompassed in a corporation's 'internal affairs' are primarily those things involved in a corporation's relations with its shareholders: 'original incorporation, the election or appointment of directors and officers, the adoption of by-laws, the issuance of corporate shares * * * the reclassification of shares and the purchase and redemption of the corporation of outstanding shares of its own stock.' 2 Restatement of the Law 2d, Conflict of Laws, Section 302, Comment e." *Newcomer v. Newcomer*, 6th Dist. Lucas No. L-11-1183, 2013-Ohio-5627, ¶57-58.

{¶37} As appellants correctly note, the internal affairs doctrine does not apply to bar a claim against a foreign corporation when the claim is predicated upon a violation of Ohio law. *See, e.g., State ex rel. Corrigan v. Great Northern-Chan Restaurant, Inc.*, 3 Ohio App.3d 355, 357, 445 N.E.2d 732 (8th Dist.1982). Further, the doctrine does not

apply to claims involving the rights of third parties, such as creditors, who are external to the corporation. *State ex rel. Petro v. Gold*, 166 Ohio App.3d 371, 2006-Ohio-943, 850 N.E.2d 1218, ¶47 (10th Dist.).

**{¶38}** In asserting that the internal affairs doctrine has no application to their six claims, appellants argue that their claims allege violations of Ohio law because they are based upon conduct occurring within the boundaries of this state. Yet, the complaints show that appellants' three primary claims, for fraud, conversion, and unjust enrichment, were predicated upon the basic allegation that appellees had conspired to decrease the value of Warren Steel, thereby lowering the value of Shulman's interest in Halliwel. The decrease in value occurred as a result of a series of loan agreements and the sale of products that were advantageous to the companies owned by Kolomoisky, Bogolubov, and Koft. In essence, appellants' complaints assert that Koft and the other two Halliwel shareholders were engaged in self-dealing, and that, after the remaining assets of the steel company were either sold or liquidated, they would be able to recoup their initial investments while Shulman would be left with no remedy.

**{¶39}** However, in making this basic assertion, appellants have not alleged that the loan agreements or product contracts were primarily negotiated or executed in Ohio. Although the alleged agreements and contracts may have had a direct effect upon the steel company's financial status, there is no specific allegation that any aspect of the conspiracy occurred within this state. Thus, the complaints are insufficient to establish that appellants' claims are predicated upon conduct taking place in Ohio.

**{¶40}** Appellants further maintain that their complaints state claims in tort and quasi-contract, under which they are "creditors" seeking reimbursement. According to

11

them, the internal affairs doctrine does not apply because this case does not relate to the internal administration of Halliwel as a corporation. But, in light of the allegations in the complaints, this assertion mischaracterizes the relationship between appellants and Halliwel. There is no dispute under the allegations that Hornbeam, on behalf of Shulman, is a shareholder in Halliwel, as are Kolomoisky and Bogolubov, and all six claims are predicated upon that relationship. To this extent, appellants' claims can only be characterized as shareholder-based causes of action, either direct or derivative.

**{¶41}** As separate argument, appellants submit that Ohio law should be applied over BVI law because the litigation has significant connections to this state. They note that the only connection the case has to BVI is that Halliwel was formed there.

**{¶42}** In support, appellants point to the Ohio Supreme Court's decision in *Gries Sports Enterprises, Inc. v. Modell*, 15 Ohio St.3d 284, 473 N.E.2d 1288 (1984). *Gries Sports* involved the enforcement of a voting agreement between two shareholders of a Delaware corporation. The agreement had multiple terms, including the requirement that two directors nominated by the minority shareholder must be elected to the board. After the agreement existed for over ten years, the majority shareholder refused to vote his stock to elect the minority directors, claiming that the agreement was no longer enforceable because Delaware law limited the duration of a shareholders' agreement to ten years. The trial court held that Ohio law was controlling as to the enforcement of the agreement, but the appellate court concluded that Delaware law applied.

**{¶43}** At the outset of its analysis, the *Gries Sports* court noted that the voting agreement in that case was analogous to a voting trust. *Id.* at 287. Quoting Section 305 of 2 Restatement of the Law 2d, Conflict of Laws, the Supreme Court further noted

12

that, although a voting trust was generally governed by the law of the state where the corporation was formed, one exception has been recognized: the law of another state will be controlling if that state has a significant relationship with both the corporation and the shareholders. *Id.* The Supreme Court then held that the exception was applicable to the voting agreement:

{¶44} "In the case at bar, the place of contracting was Ohio, the place of negotiation was Ohio, the place of performance was Ohio, the location of the subject matter of contract was Ohio, the place of incorporation was Delaware, and the place of business of the parties was Ohio. The conclusion is inescapable that Ohio 'bears the most significant relationship to the contract.'" (Citation omitted). *Id.*

{¶45} In appellants' complaints, reference is made to an agreement between Shulman, Kolomoisky, and Bogolubov, under which they agreed to consult with each other regarding any major decisions and to take steps to ensure that each shareholder ultimately recovered his initial investment. However, there is nothing in the allegations indicating that their agreement was negotiated or consummated in Ohio. Furthermore, given that the cited agreement concerned the operation of Halliwel, the allegations are insufficient to show that Ohio is where the agreement was performed or where the subject matter of the agreement is located. Unlike the facts in *Gries Sports*, the dispute in this case is between foreign shareholders in a foreign corporation. Therefore, *Gries Sports* is not controlling.

{¶46} Although it is true that Halliwel's sole asset is located in Ohio and the steel factory employs Ohio workers and pays Ohio taxes, appellants brought this action to recover funds which, according to them, have been wrongfully taken by the two other

13

shareholders, both of whom have no clear connection to the United States, let alone the state of Ohio. Hence, the action's connections to Ohio do not predominate to such an obvious extent that there exists an extraordinary circumstance warranting the application of Ohio law.

**{¶47}** Taken as a whole, appellants' allegations indicate that the underlying case involves a dispute between shareholders of a corporation regarding the proper action to be taken to preserve the value of the corporate assets. Such a dispute directly pertains to the internal affairs of Halliwel. Accordingly, the trial court did not err in holding that the viability of appellants' claims must be analyzed under the laws of the British Virgin Islands, the site of Halliwel's incorporation.

**{¶48}** Under their first claim, appellants sought an accounting of Warren Steel's corporate books. In *Relief Assn. of Union Works v. Equitable Life Assur. Soc.*, 140 Ohio St. 68, 79, 42 N.E.2d 653 (1942), the Ohio Supreme Court expressly stated that, under the internal affairs doctrine, an Ohio court lacks jurisdiction to order an accounting of a foreign corporation's corporate books. *See, also*, 2 Restatement of the law 2d, Conflict of Laws, Section 302, (1971), Comment a, which provides that the laws of the state of incorporation governs a shareholder's right to examine the corporate books, unless another state has a more significant relationship to the subject matter and the parties.

**{¶49}** Citing *Hinton v. B.F. Goodrich Co.*, 9th Dist Summit No. 7624, 1975 WL 180531 (May 7, 1975), appellants assert that an Ohio trial court has the authority to order an inspection of the books and records of a foreign corporation if they are located within the state. But, given the nature of appellants' allegations in their complaints, this rule would only apply if Halliwel's books and records were located in Ohio. Appellants

14

did not allege that they were. Appellants also cite *Danziger v. Luse*, 103 Ohio St.3d 337, 2004-Ohio-5227, 815 N.E.2d 658, for the proposition that a shareholder in a parent corporation has a common law right to inspect the books of a wholly-owned subsidiary. But this rule has no application in this case because the trial court has no authority to order an inspection of the parent corporation's books. Since Warren Steel is a wholly-owned subsidiary of Halliwel, no relief could be granted to appellants under their first claim.

{¶50} Appellants' next three claims constitute the crux of their complaints, under which they sought damages on the bases of fraud, conversion, and unjust enrichment. In disposing of these particular claims, the trial court held that under BVI law, they were either shareholder derivative claims or "unfair prejudice" claims in which a shareholder could assert a "direct" right to recover. The court further concluded that, regardless of which way the three claims were characterized, appellant failed to follow the necessary statutory procedure for maintaining such claims.

{¶51} Appellants state that their damages claims could have been characterized in other ways under BVI law; according to them, they were not limited to only derivative or unfair prejudice claims. However, in making this assertion, they do not reference any other of cause of action. Furthermore, given the nature of appellants' factual allegations, there is no dispute that the action was brought to recoup for Halliwel the funds that had supposedly been taken by Kolomoisky, Bogolubov, and Korf through self-dealing. To this extent, appellants' alleged injury was identical to the injury sustained by Halliwel and Warren Steel. Thus, appellants' three conspiracy claims, based upon allegations of fraud, conversion, and unjust enrichment, are properly

15

characterized as shareholder derivative claims.  *See Crosby v. Beam*, 47 Ohio St.3d 105, 107, 548 N.E.2d 217 (1989).  In support of their motions to dismiss, appellees submitted the affidavit of a legal expert on BVI law, who averred that the three damages claims could only be characterized under BVI law as shareholder derivative or unfair prejudice claims.

**{¶52}**  Regarding shareholder derivative claims, section 184C of the British Virgin Islands Business Companies Act of 2004 provides that a shareholder who intends to assert such a claim must first file an application with "the Court" for leave to do so.  The term "the Court" is defined under section 2 of the Act as the High Court of the Eastern Caribbean Supreme Court.  Therefore, a party lacks standing to bring a derivative suit until leave is granted by proper court.  *Vaughn v. LJ International, Inc.*, 174 Cal. App.4th 213, 94 Cal Rptr.3d 166 (2d Dist.2009).  In this case, appellants did not allege that they had obtained the required leave to pursue this type of claim.

**{¶53}**  As to unfair prejudice claims, section 184I of the 2004 Act states: "(1) A member of a company who considers that the affairs of the company have been, are being or are likely to be, conducted in a manner that is, or any act or acts of the company have been, or are, likely to be oppressive, unfairly discriminatory, or unfairly prejudicial to him in that capacity, may apply to the Court for an order under this section."  Citing the use of the word "may" in the provision, appellants contend that an unfair prejudice can be brought in *any* court.  However, such an interpretation conflicts with the inclusion of the phrase "the Court", as that phrase is defined in the Act.  Thus, as appellees' legal expert averred, an unfair prejudice claim can only be brought before the BVI High Court.  For this reason, the trial court did not err in concluding that it lacked

16

the authority to proceed on any of appellants' three damages claims.

{¶54} Appellants' complaints raised two additional claims, requesting injunctive relief and the appointment of a receiver. In contesting the trial court's analysis, they have not asserted separate arguments concerning the dismissal of those claims. Given that their right to relief under those claims was contingent upon the merits of the three damages claims, appellants could not have established a set of facts under which they would have been entitled to injunctive relief or a receiver. Accordingly, as the trial court correctly held that appellants' six claims in both complaints were barred under the internal affairs doctrine, their second assignment lacks merit.

{¶55} In the remainder of its judgment, the trial court gave two separate reasons justifying the dismissal of both cases: (1) the three damages claims would be barred as shareholder derivative claims under Ohio law because the complaints were not verified; and (2) appellants should have brought the case in the British Virgin Islands under the doctrine of forum non conveniens. Given our analysis under the second assignment, the merits of the other two bases are moot. Therefore, pursuant to App.R. 12(A)(1)(c), appellants' final three assignments need not be addressed.

{¶56} The judgment of the trial court is affirmed.


DIANE V. GRENDELL, J., concurs in judgment only,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.


_____


17

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶57} I respectfully dissent.

{¶58} Questions of law are reviewed de novo. *Reagan v. Sturges*, 11th Dist. Portage No. 2016-P-0001, 2016-Ohio-8226, ¶12.

{¶59} This writer's review of the record and applicable case law leads me to conclude that appellants have standing to bring these actions. Appellants do not transact business in Ohio. Because of this fact, the trial court stressed that appellants lacked standing to bring these actions since they do not have an Ohio business license. However, if a foreign corporation is not transacting business within Ohio, the lack of a license does not preclude it from maintaining a legal action in a state court. *Bosi v. First Fin. Inv. Fund I,* 8th Dist. Cuyahoga No. 95464, 2011-Ohio-1938, ¶15-16. Thus, R.C. 1703.29(A) does not bar this action.

{¶60} It is obvious that appellee Halliwel is transacting business within Ohio. On the grounds of standing, this writer finds, and the majority acknowledges, that appellant Hornbeam could maintain the underlying action on its own. Because Hornbeam has standing, the court has jurisdiction regardless of whether any other plaintiff has standing. Notwithstanding this fact, appellants Bracha and Shulman also have standing as beneficial owners of Halliwel. *See, e.g., Smith v. Koehler*, 91 Ohio App.3d 337 (3rd Dist.1992); *Wheeler v. Johnson*, 2d Dist. Montgomery No. 22178, 2008-Ohio-2599.

{¶61} Regarding books and records, a plaintiff may bring such a claim in Ohio to inspect a foreign corporation's books and records if they are located in Ohio. *See, e.g., Hinton v. B.F. Goodrich Co.*, 9th Dist. Summit No. 7624, 1975 WL 180531 (May 7, 1975). Shareholders are entitled to inspect the records of a wholly-owned subsidiary of

18

the corporation in which they own stock where, as in this matter, the parent corporation so controls and dominates the subsidiary that the separate corporate existence of the subsidiary should be disregarded. *See, e.g., Danzinger v. Luse*, 103 Ohio St.3d 337, 2004-Ohio-5227 (nothing about the reasoning suggests the law would be different if the parent company is foreign); *Mir v. Birjandi*, 2d Dist. Greene Nos. 2006 CA 63, 2006 CA 71, 2006 CA 72, 2007-Ohio-3444, ¶15 (there is a presumption that BVI law mirrors Ohio law on this issue).

{¶62} With respect to the internal affairs doctrine, appellants' damages claims are not barred by the doctrine as Ohio law governs this matter. In determining the applicability of the internal affairs doctrine, courts look to the nature of the claim, not the identity of the parties. *See, e.g., Gries Sports Enterprises, Inc. v. Modell*, 15 Ohio St.3d 284 (1984). When the nature of a claim involves Ohio-based misconduct, Ohio courts must have the authority to apply Ohio law and ensure that "foreign corporations comply with Ohio law while conducting activities in Ohio." *State ex rel. Corrigan v. Great Northern-Chain Restaurants, Inc.*, 3 Ohio App.3d 355, 357 (8th Dist.1982). Thus, those acting within Ohio must comply with all Ohio law and regulations, including Ohio tort law.

{¶63} At issue is whether this case is a derivative action or a direct action. A "derivative action" is defined as: "[a] suit by a beneficiary of a fiduciary to enforce a right belonging to the fiduciary; esp., a suit asserted by a shareholder on the corporation's behalf against a third party (usu. a corporate officer) because of the corporation's failure to take some action against the third party." Black's Law Dictionary (10th ed. 2014). "A derivative action requires the plaintiff to comply with the procedural requirements of

19

Civ.R. 23.1, while a direct action does not." *Carlson v. Rabkin*, 152 Ohio App.3d 672, 2003-Ohio-2071, ¶8 (1st Dist.)

{¶64} Appellants correctly stress that they are minority shareholders and that they do not bring derivative shareholder claims based on corporate law. Instead, appellants bring their claims for fraud, conversion, and unjust enrichment as tort creditors. Claims alleged by minority shareholders against shareholders who control a majority of shares in a close corporation and who use their control to deprive minority shareholders of the benefits of their investment, may be brought as individual or direct actions and are not subject to the provisions of Civ.R. 23.1, "Derivative Actions by Shareholders." *Crosby v. Beam*, 47 Ohio St.3d 105, paragraph three of the syllabus (1989). Accordingly, appellants' claims are direct claims under Ohio law. *Id.*

{¶65} Based on the foregoing, the trial court's October 22, 2015 judgments should be reversed and remanded for further proceedings. I respectfully dissent.